**C. W. STARK LUMBER CO., d. b. a. New Brighton Lumber Co., Inc., Appellant,**

v.

**Wayne K. SETHER, et al., Respondents,**

**City-County Credit Union, Respondent.**

**Norman A. DAHLBERG, etc., et al., Defendants,**

**and**

**Wayne K. Sether, et al., third party plaintiffs, Respondents,**

v.

**Alene J. HEATON, third party defendant, Respondent,**

**Title Insurance Company, third party defendant, Respondent.**

**No. 47170.**

Supreme Court of Minnesota.

Aug. 5, 1977.

Rehearing Denied Sept. 20, 1977.

---

Kelly & Finley, and James E. Finley, New Brighton, for New Brighton Lumber Co.

Barna, Guzy, Terpstra, Merrill & Giancola and James W. Reuter, Minneapolis, for Sether.

Hansen, Dordell & Bradt, St. Paul, for City-Co. Credit Union and Title Ins. Co.

Williams, Halva & Sullivan, Minneapolis, for Heaton.

Heard before KELLY, YETKA and SCOTT, JJ., and considered and decided by the court en banc.

YETKA, Justice.

This is an action to foreclose a mechanics lien by a materialman who supplied lumber to a construction company, which at the time of the first delivery of materials was the vendor in an unrecorded executory contract for the sale of real property. The construction company used the lumber to construct a house on land which it then sold to the vendees. The construction company failed to pay the materialman, who thereafter sought to foreclose a mechanics lien. The trial court granted the vendees' motion for partial summary judgment on the grounds that the materialman had failed to give the vendees notice pursuant to "owners" notice provision of Minn.St. 514.011, subd. 2. The materialman appeals from the judgment subsequently entered. We affirm.

The issue on appeal is whether the "owners" notice provision of the mechanics lien statute applies to a vendee of an unrecorded executory contract for the sale of real property when the materialman contracts directly with the contractor-vendor.

In November 1971, Alene J. and Arthur A. Heaton sold a parcel of land to Amber Construction, Inc. (Amber), by an unrecorded contract for deed. On May 5, 1974, Amber entered into a building contract with Wayne K. and Patricia J. Sether to build a two-story, three-bedroom house and garage on the property. Appellant supplied

lumber for the construction valued at $7,616.78 to Amber from August 1, 1974, to February 6, 1975. On November 27, 1974, Alene Heaton, then an unmarried woman, conveyed the land to Amber by warranty deed. Two days later, Amber in turn conveyed the land by warranty deed to the Sethers, the present fee owners. On December 6, 1974, Amber and the Sethers closed the sale of the property. Amber presented a forged lien waiver purportedly executed by appellant to the Sethers and received the mortgage proceeds. The two deeds transferring title were recorded on December 23, 1974. Amber failed to pay appellant and subsequently became insolvent. Appellant filed a mechanics lien on the property on April 22, 1975. When appellant brought an action to foreclose the lien, the Sethers brought a motion for a partial summary judgment dismissing the mechanics lien foreclosure. The trial court granted the motion on the grounds that the Sethers were equitable owners of the property at the time appellant first supplied his materials on August 1, 1974, and that appellant's failure to notify the Sethers pursuant to § 514.011, subd. 2, prevented him from perfecting his lien.

At the time appellant first supplied lumber to Amber on August 1, 1974, the record title was in the name of Alene Heaton. Further, Amber had entered into an unrecorded contract for deed with Heaton and had entered into a building contract with the Sethers. The threshold question is whether this gave the Sethers an equitable interest in the land. Appellant argues that it did not and that the Sethers thus did not qualify as "owners" under § 514.011, subd. 2. Instead, appellant contends the building contract merely constituted an option to purchase and thus conveyed no interest in the land. See, *Shaughnessy v. Eidsmo*, 222 Minn. 141, 145, 23 N.W.2d 362, 365 (1946).

■ The trial court found that an equitable interest in the property existed. Under the mechanics lien statute the principal concern is whether there is an estate in land upon which a mechanics lien could attach. Equitable as well as legal interest may be included. See, e. g., *Atkins v. Little*, 17 Minn. 342 (Gil. 320) (1871); *Carey-Lombard Lumber Co. v. Bierbauer*, 76 Minn. 434, 79 N.W. 541 (1899). Because the equitable interest the Sethers had in the land could be the subject of an action for specific performance, they qualify as holders of an interest in the land for purposes of the mechanics lien statute.

■ The more troublesome question presented is whether the "owners" notice provision of § 514.011, subd. 2, applies to a vendee of an unrecorded executory contract for the sale of property when the materialman contracts directly with the contractor-vendor. The statutory requirements of § 514.011, subd. 2, do not apply to a party "under direct contract with the owner." Thus, appellant argues that it had a direct contract with Amber, which was acting as an *owner* and not as a general contractor, and that it therefore was not required to give notice to the Sethers. Whether a mechanics lien may affect the interest of a vendee under an executory contract depends on whether the materialman is a subcontractor or a principal contractor; that is, whether Amber by agreeing to construct a building on its land and then to convey the land and the building to the vendees changed its status from an owner (in which case appellant would be a principal contractor) to a general contractor (in which case appellant would be a subcontractor). There are no Minnesota cases on this point, and the cases from other jurisdictions are mixed. See, Annotation, 50 A.L.R.3d 944; 53 Am.Jur.2d, Mechanics' Liens, § 123; 57 C.J.S., Mechanics' Liens, § 71.

To understand the issue, § 514.011 must be considered. The statute provides:

"Subdivision 1. Every person who enters into a contract with the owner for the improvement of real property and who has contracted or will contract with any subcontractors or materialmen to provide labor, skill or materials for the improvement shall give the owner the notice required in this subdivision. The notice shall be delivered personally or by certified mail to the owner or his autho-

rized agent within ten days after the contract for the work of improvement is agreed upon. The notice shall be in at least 10-point bold type, if printed, or in capital letters, if typewritten and shall state as follows:

"(a) Persons or companies furnishing labor or materials for the improvement of real property may enforce a lien upon the improved land if they are not paid for their contributions, even if such parties have no direct contractual relationship with the owner;

"(b) Minnesota law permits the owner to withhold from his contractor so much of the contract price as may be necessary to meet the demands of all other lien claimants, pay directly such liens and deduct the cost thereof from the contract price, or withhold amounts from his contractor until the expiration of 90 days from the completion of such improvement unless the contractor furnishes to the owner waivers of claims for mechanics' liens signed by persons who furnished any labor or material for the improvement and who provided the owner with timely notice.

"A person who fails to provide the notice shall not have the lien and remedy provided by this chapter.

"The notice required by this subdivision is not required of any person who is himself an owner of the improved real estate, to any corporate contractor of which the owner of the improved real estate is an officer or controlling shareholder, to any contractor who is an officer or controlling shareholder of a corporation which is the owner of the improved real estate, or to any corporate contractor managed or controlled by substantially the same persons who manage or control a corporation which is the owner of the improved real estate.

"Subd. 2. Every person who contributes to the improvement of real property so as to be entitled to a lien pursuant to section 514.01 except a party under direct contract with the owner must, as a necessary prerequisite to the validity of any claim or lien, cause to be given to the owner or his authorized agent, either by personal delivery or by certified mail, not later than 20 days after the lien claimant has first furnished labor, skill or materials for the improvement, a written notice * * *.

"Subd. 3. A contractor who contracts with any subcontractors or materialmen to provide labor, skill or materials for the improvement shall upon request provide the subcontractor or materialman with the name and address of the owner. For purposes of this section 'owner' means the owner of any legal or equitable interest in real property who enters into a contract for the improvement of such real property.

"Subd. 4. The notice required under this section shall not be required to be given where the contractor is managed or controlled by substantially the same persons who manage or control the owner of the improved real estate or in connection with an improvement to real property consisting of or providing (i) more than four family units and the improvement is wholly residential in character, or (ii) more than 10,000 total usable square feet of floor space and the improvement is partly or wholly nonresidential in character."

Subdivision 2 requires all subcontractors or materialmen to give notice within 20 days of the first furnishing of goods or services to the "owner." Subdivision 3 requires the principal contractor to provide the subcontractor or materialman with the name and address of the "owner" upon request. The problem here is that both Amber and the Sethers are arguably within the statutory definition of "owners." Appellant argues that only Amber should be the "owner" for purposes of § 514.011; the Sethers argue that only they should be the "owner" if the statute is to serve its purpose.

In support of its position, appellant argues that requiring the statutory notice to be given to all persons with an unrecorded interest in the property would be too burdensome and would require the materialman or laborer to insist that record title be

in the name of the builder. In response, the Sethers argue that even if there can be several "owners," a person supplying materials under direct contract with one owner must give notice of his lien rights pursuant to statute to all the owners except the one owner he is contracting with directly. In addition, the Sethers assert that accepting appellant's argument would mean that a builder-vendor and his subcontractors would not be required to give any notices to vendees and that the homeowners would once again become involuntary guarantors of the contractors.

Given the broad definition of "owner" in the statute, both Amber and the Sethers initially would appear to be owners. Appellant, however, did not have a "direct contract" with the Sethers. A parcel of land may have several "owners" if the land is divided into several estates. In this case, appellant was thus required to give notice to the Sethers.

With regard to Amber, if the statute includes it as an owner, then Amber would not be required to give appellant the names of any other owners. The fairest way to apply the statute would be to find that so far as the "owner" notice provision is concerned, Amber did not qualify as an owner. The statute was amended to protect the homeowner.[1] Here, Amber was both an owner and a contractor. Under these circumstances it would seem its status as a contractor must prevail for purposes of giving notice. This would require contractors such as Amber to give materialmen and laborers notice of the names and addresses of persons, like the Sethers, who were *only* owners.[2]

The Sethers should have been given notice, and Amber was at fault for failing to give appellant the name and address of the Sethers.[3] Appellant and the Sethers are both innocent parties; however, the purpose of the statute is to protect an innocent homeowner in instances just such as this. If an innocent party must be hurt, the materialman is less favored than a homeowner because the materialman is far more sophisticated and familiar with the construction industry and better able to protect himself than is the homeowner. Moreover, in this case appellant had done business with Amber many times before and knew that Amber usually contracted with third parties for the construction of custom built homes.

Affirmed.

---

1. This court recently stated in *Nasseff v. Schoenecker*, Minn., 253 N.W.2d 374, 377 (1977): "In 1973, the legislature, at the urging of the attorney general, sought to correct a problem then frequently faced by homeowners when they entered into contracts with building contractors for the improvement of their property. Often, as the proponents of the legislation urged, a homeowner would find that, after he had paid the contractor in full, numerous other subcontractors or materialmen that were previously unknown to him had filed mechanics liens against his property. To rectify this evil, the legislature added the notice requirements of § 514.011. The evident purpose was to protect an owner from hidden liens arising from labor or materials supplied to the contractor by subcontractors or materialmen who extended credit to the contractor on the security of the owner's property and whose identities were unknown and often unascertainable by the owner."

2. We do not imply by this opinion that materialmen dealing with contractor-owners must give notice to persons acquiring an unrecorded interest in the property subsequent to the first delivery of goods by the materialmen. Notice under the statute need not be given by the materialmen to such subsequently acquired interest.

3. There was evidence appellant knew of the Sethers interest in the land. Appellant disputed this in the motion for summary judgment and thus it cannot be the basis of the decision here.