William F. DOLDER, etc., Respondent,

v.

Wayne G. GRIFFIN, et al., Appellants,

Guyer's Builders Supply, Inc.,
Respondent,

Zagar Construction Company,
Inc., Defendant,

M. H. Kerber Masonry, Respondent,

Kurt L. Shannon of Shannon's
Decorating, Respondent,

Mill City Heating & A/C Co.,
Respondent,

Berg Dry Wall, Inc., Respondent,

Ronson Door Sales, Inc., Respondent,

Bartholomew Baker, etc., Respondent,

Woodmaster, Inc., Respondent,

Ham Lake Masonry, Inc., Respondent,

David P. Kelley, etc., Respondent,

Aldo, Inc., Respondent.

No. 81–1254.

Supreme Court of Minnesota.

Aug. 27, 1982.

Eastlund, Peterson & Solstad, Mark T. Solstad and Jeffrey W. Jacobs, Minneapolis, for appellant.

Malcolm D. Reid, Minnetonka, for Dolder, etc. and Bartholemew Baker.

Vesely, Otto, Miller & Keefe, Hopkins, for Guyer's Builders Supply, Inc.

Penberthy & Larson, Excelsior, for M. H. Kerber Masonry.

Wakefield, Lundberg & Vie, Elk River, for Shannon of Shannon's Decorating.

Sidney L. Brennan, Jr., Minnetonka, for Mill City Heating & A/C Co.

Beitz, Johnson, Forsberg & Galt, Minneapolis, for Berg Dry Wall, Inc.

Tieso & Stevens, St. Paul, for Ronson Door Sales, Inc.

John Rice, Minneapolis, Grathwol, Oberhauser & Randall and Kurt Schuman, Wayzata, for Woodmaster, Inc.

Dobis, Wersal & Wersal, Minneapolis, for Ham Lake Masonry, Inc.

J. L. Bennett, Dunkley & Bennett, Minneapolis, for Kelly.

Stephen J. Poindexter, Minneapolis, for Aldo, Inc.

WAHL, Justice.

Appellants Wayne G. Griffin, Brenda B. Griffin (Griffins) and the First National Bank of Minneapolis (bank) appeal from the order of Hennepin County District Court granting respondents' motion for partial summary judgment and denying appellants' motion for summary judgment, and from the judgment of October 21, 1981. We reverse and remand.

William F. Dolder commenced this action to foreclose his mechanic's lien against Lot 2, Block 3, Beaverwood Addition, City of Minnetonka. Several other mechanics and materialmen also sought to foreclose their mechanic's liens. After discovery, the Griffins and the bank moved for summary judgment dismissing the causes of action of the lien claimants on the ground that the lien claimants had failed to give the Griffins statutory prelien notice as required by Minn.Stat. § 514.011, subd. 2 (1980). Various lien claimants moved for partial summary judgment. The trial court granted the motion of the lien claimants, finding that prelien notice was not required, and denied the motion of the Griffins and the

bank. The Griffins and the bank moved the trial court to certify, pursuant to Minn. R.Civ.App.P. 103.03, that its order involved important and doubtful questions and should be immediately appealable. The trial court denied this motion but directed entry of judgment and, pursuant to Minn.R. Civ.P. 54.02, made an express determination that there was no just reason for delay. We accepted the appeal.

On or about August 25, 1979, Wayne G. Griffin executed, as "buyer," a purchase agreement with Zagar Construction Company (Zagar) for the property in question. Zagar owned the land and, by the purchase agreement, agreed to construct a home on the property. The purchase price was $190,000, with the sale conditioned upon the Griffins obtaining financing and selling their home. Wayne's wife, Brenda, did not sign as "buyer" but rather as "agent." Wayne Griffin paid $1,000 earnest money by two checks dated August 18, 1979, and September 24, 1979.

On October 10, 1979, the property was surveyed and staked. The record does not reflect the fee charged for this service. In answer to interrogatories, the Griffins stated that the first item of material or labor was furnished for the beginning of improvements on "[a]pproximately October 16, 1979."

On or about October 23, 1979, a second purchase agreement was executed, with both Wayne G. and Brenda B. Griffin signing as "buyers" and Brenda signing also as "agent." This second purchase agreement required additional earnest money, added the conditions that financing be "satisfactory to buyers," made the sale contingent on the Griffins selling their home, extended the closing date, and stated that "one of the buyers is a Licensed Real Estate Agent and is purchasing * * * for personal residential purposes."

At all times between August 25, 1979, and April 25, 1980, the date of closing, Zagar was the record owner of the property. Zagar acted as the general contractor for the construction of the Griffins' home. All earnest money ($22,000) was paid to Zagar by November 3, 1979. As to the 12 lien claimants, 10 stated in their lien statements and affidavits that they contracted with John Zagar and Zagar Construction Company. Two lien claimants said that they contracted with the Griffins in addition to contracting with Zagar. While the Griffins had contact with several of the lien claimants, it is unclear whether that contract ever ripened into a contract between the Griffins and any of the lien claimants. According to the lien statements and affidavits, the first contribution to the improvement by any of the lien claimants was made by Dolder Plumbing and Heating Company on November 23, 1979. On subsequent dates the other lien claimants performed their work and provided their materials.

On April 25, 1980, a closing was held at the Universal Title Insurance Company (Universal). The mortgagee, First National Bank of Minneapolis, was insured by and represented by Universal. The Griffins did not purchase title insurance and were represented by their attorney. At closing, the balance of the purchase price was paid to Zagar, at which time Zagar, by its president, John P. Zagar, presented a sworn construction statement and supporting mechanic's lien waivers. The lien waivers had been forged, and the lien claimants, who are parties to this action, timely filed mechanic's lien statements. This foreclosure action followed.

It is undisputed that no prelien notices, as provided by Minn.Stat. § 514.011, subd. 2, were sent to the Griffins. Although the Griffins' interest was not of record, they stated by affidavit that the property in question was posted with a sign indicating that the home was being built for the Griffins.

The following issues are presented on appeal:

1. Where the first visible beginning of improvement by one mechanic is commenced prior to an owner's obtaining an equitable interest in the property, does Minn.Stat. § 514.011, subd. 2 require mechanics and materialmen who have started

work after the owner has obtained his interest to give that owner a prelien notice?

2. Did the Griffins obtain an interest enforceable by specific performance upon the execution of the October 3, 1979, purchase agreement?

3. Did the trial court err in ruling that mechanics need not provide statutory prelien notice to owners such as the Griffins, who are "sophisticated" because of Mrs. Griffin's status as a licensed real estate agent?

Minnesota Statutes § 514.011, subd. 2 requires potential lien claimants to give all "owners" a prelien notice that the owner's property may be subjected to a mechanic's lien. That section states, in pertinent part:

Every person who contributes to the improvement of real property so as to be entitled to a lien pursuant to section 514.-01 except a party under direct contract with the owner must, as a necessary prerequisite to the validity of any claim or lien, cause to be given to the owner or his authorized agent, either by personal delivery or by certified mail, not later than 45 days after the lien claimant has first furnished labor, skill or materials for the improvement, a written notice * * *.

Minn.Stat. § 514.011, subd. 2. For the purpose of this notice requirement, " 'owner' means the owner of any legal or equitable interest in real property who enters into a contract for the improvement of the real property." Minn.Stat. § 514.011, subd. 5 (1980).

Respondent lien claimants argue that no prelien notice need be given to the Griffins because the Griffins acquired their interest after the first improvements had been made by one mechanic; that the Griffins do not have an interest which can be enforced by specific performance and are, therefore, not "owners" to whom prelien notice need be given; and that, even if the letter of the statute required prelien notice, the Griffins are "sophisticated" vendees to whom prelien notice need not be given.

Appellants argue that the Griffins are "owners" within the meaning of the notice statute and that the trial court erred in declaring that the equities of the case require a finding that no prelien notice need be given to vendors who are "sophisticated," because one of the vendors was a licensed real estate agent on the date the first purchase agreement was signed.

1. Whether the lien claimants need give prelien notice to any owner acquiring an interest in the property being improved subsequent to the date of the first visible improvement by one mechanic is a question of first impression for this court.

The lien claimants cite two recent cases to support their argument that no prelien notice need be given. We held in *C. W. Stark Lumber Co. v. Sether*, 257 N.W.2d 556 (Minn.1977) (*Sether*), that prelien notice had to be given to the vendee of an unrecorded executory contract for the sale of real property where the contractor had forged lien waivers. As in the present case, both the vendee and materialmen were innocent parties. In *Sether*, the vendee's interest arose prior to the first delivery of materials. The lien claimants rely on the following footnote:

We do not imply by this opinion that materialmen dealing with contractor-owners must give notice to persons acquiring an unrecorded interest in the property subsequent to the first delivery of goods by the materialmen. Notice under the statute need not be given by the materialmen to such subsequently acquired interest.

*Id.* at 560, n.2. *Minnesota Wood Specialties, Inc. v. Mattson*, 274 N.W.2d 116 (Minn. 1978) (*Mattson*), dealt with the question of who must be served, not with a prelien notice but with a mechanic's lien statement. We limited the statutorily required service of such statements to be made on those holding legal title to the property and found no support from *Sether* for the proposition that equitable owners must be served. We interpreted *Sether* by stating:

[T]his court [in *Sether*] held that a vendee of an unrecorded executory contract for the sale of property on which the vendor as general contractor con-

structed a house, was entitled, pursuant to § 514.011, subd. 2, to receive prelien notice from subcontractors of their contributions to the property *if the vendee had acquired his interest before improvements were made.*

*Mattson*, 274 N.W.2d at 119 (emphasis added). The lien claimants rely on this language for support of their proposition that, once improvements have begun, no after-acquiring owner need be given prelien notice, regardless of when the mechanic or materialman first commences work or delivery.

Neither *Sether* nor *Mattson* was intended to relieve lien claimants from giving prelien notice to all who are owners as of the date of the lien claimant's first work or delivery, but rather to relieve mechanics from having constantly to ascertain the identity of subsequent owners.

■ First, the statutory language requiring prelien notice of those contributing to the improvement of real property must be made "not later than 45 days after *the lien claimant has first furnished labor, skill or materials.*" Minn.Stat. § 514.011, subd. 2 (emphasis added). The statute speaks of each lien claimant as being required to furnish prelien notice and does not provide for an exemption from giving notice by a relation back to the first day of delivery or labor by the first mechanic or materialman. Rather, notice should be given to all owners as of the date the mechanic or materialman first furnishes labor, skill or materials.

Property in regard to which a mechanic's lien is claimed is frequently sold and conveyed at some time after work has begun on the premises and before the mechanics lien is filed, particularly in situations where a real-estate developer or construction contractor erects a house or other building upon land which he owns and which he has agreed to sell to a purchaser, or which he intends to hold for such sale. In case of such a change of ownership, it appears that the owner to whom the statute requires notice to be given generally is the person who was the owner at the time when the statute re-

quires the notice to be given. Thus, in regard to a prelien notice, such as a notice of furnishing of materials or notice of intention to claim a lien, it is held that notice is properly given and is required to be given to the owner at the time the contract was made, or the work commenced or the materials are furnished; and notice to a subsequent owner is not required.

Annot. 76 A.L.R.3d 605, 611 (1977).

■ Second, the policy established by Minn.Stat. § 514.05 (1980) for the relation back of all liens to the first improvement or delivery of materials with regard to priority does not apply to establishment of the lien. That policy was explained by Justice Mitchell:

A subcontractor comes in by reason of his direct contact relation to the contractor, and the right of lien of the former for his claim is *pro tanto*, in a certain sense, substitutionary to that of the latter, and by relation is deemed to have attached at the date when the lien of the original contractor attached. * * * * The fact that buildings are in process of erection on premises charges every one with notice of the rights of the parties doing the work.

*Glass v. Freeberg*, 50 Minn. 386, 390, 52 N.W. 900, 901 (1892). While the notice afforded mortgagees that mechanics may have a priority derives from the fact that improvements are visible, the purpose of prelien notice is "to protect an owner from hidden liens arising from labor or materials supplied to the contractor by subcontractors or materialmen who extended credit to the contractor on the security of the owner's property and whose identities [are] unknown and often unascertainable by the owner." *Nasseff v. Schoenecker*, 312 Minn. 485, 490–91, 253 N.W.2d 374 (1977).

The lien claimants argue that none of them was required to give prelien notice because the first visible work done by a mechanic was the staking of the property after a survey on October 10, 1979. Further, they point to the Griffins' answer to interrogatories that the first work began

"approximately October 16, 1979." However, none of the lien claimants seeking to foreclose commenced their work or deliveries before November 23, 1979. Therefore, even if the August 25, 1979, purchase agreement did not give both Griffins an equitable interest requiring prelien notice,[1] if the Griffins were "owners" under the October 23, 1979, purchase agreement, Minn.Stat. § 514.011, subd. 2 would require prelien notice to preserve the validity of the mechanic's liens in question, because lien claimants cannot relate their initiation of work back to the first improvement for lien purposes.[2] Therefore, each mechanic and materialman was required to give prelien notice to owners as of the date of each materialman's delivery and commencement of each mechanic's services.

2. The lien claimants next argue that the October 23, 1979, purchase agreement is so indefinite and illusory that the Griffins could not enforce it by an action for specific performance. Therefore, they would not possess an equitable interest in the property, would not be "owners" within the meaning of Minn.Stat. § 514.011, subd. 5, and need not be given prelien notice. *See C. W. Stark Lumber Co. v. Sether*, 257 N.W.2d at 558. This argument is without merit.

The language of the October 23, 1979, purchase agreement which is challenged as indefinite and illusory provides:

> Balance of a purchase price due on or before May 1, 1980, the date of closing. The agreement is subject to and contingent upon buyers obtaining, at their expense, a conventional mortgage in the amount of $110,000.00, satisfactory to buyers amortized over 29 years. Application for which shall be timely made by buyers. In the event the buyers are unable to obtain a commitment for such mortgage, exercisable on closing, this agreement shall be null and void and all monies paid by buyers to seller shall be promptly refunded.

A second contingency was that the Griffins sell their home in Golden Valley. The lien claimants contend that the financing contingency is indefinite because no interest rate is stated and illusory because the financing must be "satisfactory to buyers."

First, even though the financing contingency may be a condition precedent, "a party may waive a condition precedent to his own performance of a contractual duty, when such condition precedent exists for his sole benefit and protection, and compel * * * performance or nonperformance of such condition." *Miracle Construction Co. v. Miller*, 251 Minn. 320, 326, 87 N.W.2d 665, 670 (1958); *H. L. Munn Lumber Co. v. City of Ames*, 176 N.W.2d 813, 816 (Iowa 1970); *Accord, McGee v. Breezy Point Estates*, 283 Minn. 10, 21, 166 N.W.2d 81, 89 (1969); *Pease v. Brown*, 186 Cal.App.2d 425, 428, 8 Cal.Rptr. 917, 920 (1960). Second, the language requiring the financing to be "satisfactory to buyers" does not make the agreement illusory.

Nor does the provision making the agreement "subject to" plaintiff's securing "satisfactory" leases necessarily constitute a condition to the existence of a contract. Rather, the whole purchase receipt and this particular clause must be read as merely making plaintiff's performance dependent on the obtaining of "satisfactory" leases. Thus a contract

---

1. Only Wayne Griffin executed the August 25, 1979, purchase agreement as "buyer."

2. The second purchase agreement added Brenda Griffin as a "buyer" and did not constitute a completely new agreement. The modification appears to have been by mutual consent, and: [t]he contract is subject to modification by the parties at any time. * * * * A written contract for the sale of real estate may be modified by a subsequent written agreement * * *. * * * * While the parties may agree to modify the contract, they ordinarily do not at the same time contemplate the fact that they execute a new contract by their very act of modification. * * * * Parties who have the power to make a contract have the power to unmake or modify it * * * [and] they may, by a subsequent agreement based upon a sufficient consideration, modify their contract in any manner they choose. The modification may consist in the substitution of a new purchaser, or the extension of the time of payment. 8A G. W. Thompson, *Real Property*, § 4455 at 323–25 (1963) (footnotes omitted).

arose, and plaintiff was given the power and privilege to terminate it in the event he did not obtain such leases. (See 3 Corbin, Contracts (1951), § 647, pp. 581–585.)

*Pease v. Brown*, 186 Cal.App.2d 425, 430, 8 Cal.Rptr. 917, 921 (1960), citing to *Mattei v. Hopper*, 51 Cal.2d 119, 122, 330 P.2d 625, 626 (1958). The California court in *Rodriguez v. Barnett* stated: "Contracts making the duty of performance of one of the parties conditioned upon his 'satisfaction' are upheld on the theory that the expression of dissatisfaction must be genuine and not arbitrary, and that an objective criterion,—good faith—controls the exercise of the right to determine satisfaction." 52 Cal.2d 154, 160–61, 338 P.2d 907, 911 (1959); *See also, Solberg v. Kane*, 536 S.W.2d 885, 887 (Mo.1976). Third, although the interest rate is not stated, the purchase agreement is contingent upon the Griffins obtaining a "conventional mortgage," language which strongly indicates that the interest rate will be the market rate.

Traditionally, in order for a court to grant specific performance of a contract, the terms of that contract had to be "so specific and distinct as to leave no reasonable doubt of their meaning." 17 Dunnell, Dig. (3 ed.) § 8781. In recent years, that historical insistence upon specificity has been relaxed somewhat, and this court has ordered specific performance of a contract containing some indefinite terms.

*Brownlee v. Ertzos*, 289 Minn. 83, 91, 182 N.W.2d 697, 702 (1970) (action by purchasers against vendor for specific performance of a written agreement for the conveyance of real estate).

The October 23, 1979, purchase agreement is not so indefinite and illusory that the Griffins could not enforce it by an action for specific performance. We hold, therefore, that the Griffins, possessed of an equitable interest in the property, are owners within the meaning of Minn.Stat. § 514.011, subd. 5, to whom prelien notice must be given.

■ 3. The trial court granted partial summary judgment which exempted the lien claimants from the obligation to give prelien notice because, while both the Griffins and the lien claimants were innocent parties, the equities favored the lien claimants in view of the facts that Brenda Griffin was a real estate agent and that the Griffins were represented at the closing by an attorney and benefited from the expertise of the bank and its title insurer. In its memorandum the trial court stated that "the *Sether* court's concern with the relative sophistication of the parties and their ability to protect themselves from the contractor's omissions would yield an opposite result under the facts of this case." In *Sether*, we stated:

Appellant and the Sethers are both innocent parties; however, the purpose of the statute is to protect an innocent homeowner in instances just such as this. If an innocent party must be hurt, the materialman is less favored than a homeowner because the materialman is far more sophisticated and familiar with the construction industry and better able to protect himself than is the homeowner.

*C. W. Stark Lumber Co. v. Sether*, 257 N.W.2d at 560. By characterizing the Griffins as "sophisticated," the trial court relied not only on Brenda Griffin's real estate license, but on the expertise of the Griffins' attorney, their bank and its title insurer. We know from answers to interrogatories that Brenda Griffin was licensed on and after August 25, 1979, as a real estate agent; but we do not know anything else about her prior experience or "sophistication." To attribute to the Griffins the expertise of their attorney, bank and its title insurer and conclude that the cumulative sophistication protected the Griffins, thereby exempting lien claimants from giving prelien notice, would eviscerate the notice requirement of Minn.Stat. § 514.011, subd. 2. Many vendees have the aid of such expertise at closings.

■ The trial court relied on the principle that "mechanic's lien statutes have been liberally construed to effectuate their purpose of protecting the rights of workmen

and materialmen who furnish labor and material for the improvement of real estate. *Minnesota Wood Specialties v. Mattson*, 274 N.W.2d 116, 119 (Minn.1978)." We have repeatedly stated this principle. *Anderson v. Breezy Point Estates*, 283 Minn. 490, 168 N.W.2d 693 (1969); *Armco Steel Corp. v. Chicago & North Western Ry.*, 276 Minn. 133, 149 N.W.2d 23 (1967). Counterpoised to this principle is the principle that Minn. Stat. § 514.011 should be strictly construed as to prelien notice because this statute was adopted "to remedy the unfairness arising from the foreclosure of mechanics liens on property of unsuspecting owners." *Polivka Logan Designers, Inc. v. Ende*, 312 Minn. 171, 176, 251 N.W.2d 851, 854 (1977). *See Nasseff v. Schoenecker*, 312 Minn. 485, 253 N.W.2d 374 (1977); *Blankholm v. Fearing*, 222 Minn. 51, 22 N.W.2d 853 (1946).

This apparent conflict has been harmonized by the following reasoning:

> Mechanic's lien laws are strictly construed as to the question whether a lien attaches, but are construed liberally after the lien has been created. While the Mechanic's Lien Act is to be liberally construed as a remedial act, yet mechanics' liens exist only by virtue of the statute creating them, and such statutes must be strictly followed with reference to all requirements upon which the right to a lien depends.

Annot., 76 A.L.R.3d 605, 618 (1977) (footnotes omitted). Thus, in establishing a valid lien in this case, the prelien notice is a prerequisite. *Mattson* involves the question of who must be served with a lien statement and liberally construes the mechanic's lien statute so as to protect the lien claimant. This is proper, because service of the lien statement preserves an existing lien, and interpretation of the requirement should favor the mechanic, while giving prelien notice is a prerequisite to creation of a valid lien and requires a strict construction of the statute.

The factor of "sophistication" on the part of mechanics and materialmen in *Sether* was a basis for favoring the homeowner. Such a pronouncement reinforces the policy that the prelien notice provision should be construed to favor owners and does not establish a criterion for evaluating each owner to determine where the risk should fall. To begin evaluating sophistication could lead to removing the protection of the statute where owners are attorneys, laborers, materialmen, mechanics or any number of people affiliated with the housing industry. While the result may be harsh, the Oregon court found a materialman not to have preserved his lien because the prelien notice was delivered one day late. *J. W. Copeland Yards v. Taranoff*, 238 Or. 167, 392 P.2d 259 (1964).

Some lien claimants argue that the appellants would have done nothing differently at the closing had they received prelien notice and that the burden of discovering and notifying all owners would be onerous. The first argument, if confirmed, would effectively nullify the prelien notice requirement. It would also effectively reverse our holding in *Sether*. The second argument is answered by the statute which requires contractors, upon request, to give subcontractors the names and addresses of owners. Minn.Stat. § 514.011, subd. 3 (1980).

We reverse the judgment granting respondents' motion for summary judgment as to those lien claimants who did not allege contractual relations with the Griffins, and remand for entry of judgment as to those claimants. The claims of those lien claimants who have alleged contractual relations with the Griffins present a genuine issue of material fact and should be tried.

Reversed in part, affirmed in part, and remanded for proceedings consistent with this opinion.