MARQUE PLUMBING, INC., Appellant,

v.

Marty A. BARRIS, et al., Respondents,

Cinnamon Ridge Carriage Homes
Association, et al., Defendants.

No. CO–85–1295.

Court of Appeals of Minnesota.

Jan. 14, 1986.
Review Denied March 24, 1986.

Kurt M. Anderson, Thomas P. Balyk & Associates, St. Paul, for appellant.

Daniel J. Biersdorf, David R. Mylrea, Estes, Parsinen & Levy P.A., Minneapolis, for respondents.

Heard, considered, and decided by HUSPENI, P.J., and FOLEY and FORSBERG, JJ.

## OPINION

HUSPENI, Judge.

This is a mechanic's lien foreclosure case initiated by appellant Marque Plumbing, Inc. (Marque) against property owners of the Cinnamon Ridge Carriage Homes development. On June 3, 1985, the trial court granted summary judgment for respondents based on Marque's failure to meet the notice requirements in the mechanic's lien statute, Minn.Stat. § 514.011 (1982). Summary judgment was also entered in favor of twelve other homeowners. Nine of those cases were consolidated in a separate appeal. All encumbrances by the court and the lis pendens were subsequently discharged when Marque failed to post a supersedeas bond. Respondent now claims the appeal is moot. We find that the issues are not moot and affirm the trial court's summary judgment in favor of respondents.

## FACTS

In November 1982, respondent Marty Barris entered into a purchase agreement with Zachman Homes Incorporated for construction of a new home in Cinnamon Ridge, a residential development in Eagan. Prior to November 1982, Zachman was the fee owner of the property. On November 28, 1982, Barris completed an option sheet for the purchase of the new home, the subject matter of this particular litigation.

Marque was a subcontractor for Zachman in the Cinnamon Ridge development and provided plumbing services and material pursuant to its contract with Zachman. Marque commenced supplying labor and materials to the property in question on January 25, 1983. Work was completed on February 24, 1983.

Subsequently, Marque requested and received the names of three homeowners as provided under the pre-lien notice statute, Minn.Stat. § 514.011, subd. 3 (1982). Marque served timely pre-lien notice on two of the homeowners on February 3, 1983. Zachman became uncooperative in providing homeowners' names after that time. Barris' name was not included in the homeowner information provided by Zachman. It is undisputed that Barris never received pre-lien notice from Marque. Zachman never paid Marque for its work or materials, and on November 2, 1983, Zachman filed bankruptcy.

On February 16, 1983, Barris executed a warranty deed, a mortgage to respondent David C. Bell Investment Company and an assignment of mortgage to Lumberman's Development Corporation. The deed was recorded in the office of the Dakota County Recorder on March 2, 1983.

Marque then filed a lien statement describing the Barris property and other real estate pursuant to Minn.Stat. § 514.08 (1982). The lien statement, recorded on May 16, 1983, listed Zachman Homes as "owner" of the premises and indicated that it had been served a copy of the statement. Barris never received a copy of this statement.

The trial court determined that Barris was the "owner" of the property since he had acquired an interest in the property prior to Marque's first item of work on January 25, 1983. As such, he was entitled to pre-lien notice within the 45–day period prescribed in Minn.Stat. § 514.011, subd. 2 (1982). Because it was undisputed that Barris never received notice, the trial court determined that summary judgment was proper.

On June 25, 1985, the trial court ordered Marque to post a supersedeas bond at one and one-half times the amount of each lien claim to continue the lis pendens. Marque then moved to either reduce or vacate the bond. On July 30, 1985, this court denied

relief. Marque's petition for further review of that decision in the Minnesota Supreme Court was subsequently denied.

Respondents then moved the trial court for an order discharging the mechanic's lien and the lis pendens. On September 26, 1985, the trial court granted respondents' motion but stayed the order until October 7, 1985. On October 9, 1985, this court declined to stay the discharge order. On October 14, 1985, respondents moved to dismiss this appeal as moot. Marque was granted time to respond. On October 23, 1985, this court ordered that decision on respondents' motion to dismiss be deferred and considered with the merits of the appeal.

### ISSUES

1. Does the trial court's discharge of the mechanic's lien and the lis pendens due to Marque's failure to post a supersedeas bond make this appeal moot?

2. Did the trial court err in determining as a matter of law that Marque failed to provide a valid pre-lien notice and that service of a post-lien statement on a contractor-vendor is invalid when a deed to the property was recorded by the purchaser more than two months prior to service of the statement?

### ANALYSIS

### I.

■ Barris argues that this appeal is moot since the mechanic's lien and the lis pendens were discharged for Marque's failure to post a supersedeas bond. We cannot agree. While we would deem the appeal moot if Barris had transferred the property to a bona fide purchaser, such is not the case here. All parties on appeal are the same parties that appeared in the original proceeding. Under these circumstances, we would effectively deprive a lien holder a right to appeal if we were to declare that appeal moot for failure to file a supersedeas bond.

### II.

Summary judgment shall be entered only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that either party is entitled to judgment as a matter of law." Minn.R.Civ.P. 56.03. On review, a court must view the evidence most favorably to the party against whom the motion for summary judgment was granted. *Grondahl v. Bulluck*, 318 N.W.2d 240, 242 (Minn.1982).

The proper statutory framework for this appeal is found in Minn.Stat. § 514.011 which states in part:

> Subd. 2 * * * Every person who contributes to the improvement of real property so as to be entitled to a lien pursuant to section 514.01 except a party under direct contract with the owner must, as a necessary prerequisite to the validity of any claim or lien, cause to be *given to the owner or his authorized agent, either by personal delivery or by certified mail, not later than 45 days after the lien claimant has first furnished labor, skill or materials for the improvement, a written notice * * *.*
>
> *     *     *     *     *     *
>
> Subd. 5 * * * For the purposes of this section, "owner" means the owner of *any legal or equitable interest in real property whose interest in the property (1) is known to one who contributes to the improvement of the real property,* or (2) has been recorded or filed for record if registered land, and who enters into a contract for the improvement of the real property.

Minn.Stat. § 514.011, subds. 2 and 5 (1982) (emphasis added). In addition to pre-lien notice, a subcontractor must also perfect the lien. Section 514.08 provides in part:

> Subdivision 1. The *lien shall cease at the end of 90 days after doing the last of such work, or furnishing the last item of such skill, material, or machinery, unless within such period:*

(1) A statement of the claim therefor, be filed for record with the county recorder of the county in which the improved premises are situated, * * * and

(2) A copy of such statement be served personally or by certified mail *on the owner or his authorized agent or the person who entered into the contract with the contractor.*

Subd. 2. Such statement shall be made by or at the instance of the lien claimant, be verified by the oath of some person shown by such verification to have knowledge of the facts stated, and shall set forth:

  *   *   *   *   *   *

(6) The name of the owner [of the property] at the time of making such statement, according to the best information then had * * *.

Minn.Stat. § 514.08, subds. 1 and 2(6) (1982) (emphasis added).[1]

Pre-Lien Notice

The trial court based its determination regarding pre-lien notice on *C.W. Stark Lumber Co. v. Sether,* 257 N.W.2d 556 (Minn.1977), *Dolder v. Griffin,* 323 N.W.2d 773 (Minn.1982), and *Mill City Heating & Air Conditioning Co. v. Nelson,* 351 N.W.2d 362 (Minn.1984).

In *Stark,* the supreme court held that a materialman must give pre-lien notice to a vendee under a purchase agreement if the vendee's executory interest was acquired prior to the first delivery of materials. In so holding, the court addressed the difficulty involved when there are two concurrent "owners," the contractor and the buyer under a purchase agreement. The court concluded that the most equitable way to read the notice provisions under the statute was to find that the contractor did not qualify as an "owner." *Stark,* 257 N.W.2d at 560. The decision was based in part on the 1973 amendments to the mechanic's lien statute which implemented the notice provisions of section 514.011. Amendment of this section stemmed from the frequent problems faced by homeowners who were

unaware of mechanic's liens filed against their property. *Id.* at 560 n.1.

In *Dolder,* the supreme court held that the homeowners possessed an equitable interest in property when they executed a contract for sale of the property. As such, they were "owners" under the statute and entitled to pre-lien notice when the interest was acquired prior to the first visible sign of improvement by a materialman. The court further addressed the relative sophistication of the parties involved:

> [T]he purpose of the [notice] statute is to protect an innocent homeowner in instances just such as this. If an innocent party must be hurt, the materialman is less favored than a homeowner because the materialman is far more sophisticated and familiar with the construction industry and better able to protect himself than is the homeowner.

*Dolder,* 323 N.W.2d at 779 (quoting *Stark,* 257 N.W.2d at 560).

In *Mill City,* the supreme court held that a purchaser of registered land under an unrecorded purchase agreement who was not in possession of the property was not an "owner" entitled to pre-lien notice unless the subcontractor actually knew of the ownership interest. The decision recognized a distinction between registered and unregistered land. *Mill City,* 351 N.W.2d at 364. A purchaser of registered property must record his or her ownership interest before the person qualifies as an "owner" under Minn.Stat. § 514.011, subd. 5. The court made an exception where the subcontractor has actual knowledge of the ownership interest, because "[i]t would be unfair and unreasonable for the law to allow the subcontractor to wear blinders and look only to the certificate of title." *Id.* at 365. In *Mill City,* the homeowners claimed that the subcontractor had actual knowledge since the general contractor had erected a sign on the property stating that the home was being built for the homeowners. The

---

**1.** The 1982 version of the mechanic's lien statute is applicable to this case. The current version of the statute provides that the lien ceases at the end of 120 days after the last item of work or material is provided. *See* Minn.Stat. § 514.08, subd. 1 (1984).

court remanded for further determination on this issue of actual notice.

■ The pre-lien notice provisions of the mechanic's lien statute are strictly construed to protect unsuspecting homeowners, and section 514.08 is liberally construed in order to protect laborers and materialmen who furnish goods and services for the improvement of real estate. *Dolder*, 323 N.W.2d at 779–80; *see also Nor-Son, Inc. v. Nordell*, 369 N.W.2d 575, 577 (Minn.Ct.App.1985), *pet. for rev. denied*, (Minn. Sept. 13, 1985).

Marque argues that notwithstanding these cases, its failure to give pre-lien notice to Barris was not fatal because it had no actual knowledge that he was the owner of the property. In support of this argument, Marque relies on section 514.011, subd. 5 which provides that a materialman must give notice to an owner "known to one who contributes to the improvement of the real property." Minn.Stat. § 514.011, subd. 5 (1982).

In its memorandum, the trial court stated:

> After these homeowners had entered into their purchase agreements, they completed the Option Sheet; choosing, among other things, kitchen appliances and colors, bathroom facilities and colors, carpet colors, exterior finishing, etc. Marque Plumbing then completed its work according to those specifications. Even if Marque never actually saw the Option Sheets, which prominently displayed the purchaser's name in the upper left corner, the communication of each homes different specifications, Marque's sophistication as a subcontractor and its dealings with Zachman Homes, Inc. should have clearly indicated that the homes being worked on by Marque *were already sold.*

(Emphasis in original).

■ Marque contends that this conclusion is erroneous because it imputes actual knowledge on its part. Marque further claims that the question of whether it had actual knowledge was disputed and thus an inappropriate basis for summary judgment. We agree that actual, not constructive, notice is required by the statute. *See Mill City*, 351 N.W.2d at 365.

Edward Bigaouette, president of Marque, states in an affidavit:

> At the time I commenced work at the premises * * *, I had no knowledge of any person having an ownership interest in said property except for Zachman Homes, Inc.

In another affidavit, Bigaouette states:

> I had no general understanding * * * at the outset of [the] work that units in the Cinnamon Ridge development were to be built on a "presold" basis.

■ Moreover, as the trial court recognized, Zachman was uncooperative in providing names of homeowners to Marque. The record does not indicate what role this uncooperative behavior played in Marque's failure to give pre-lien notice to Barris. Nor do we find support for Barris' contention that Marque had an affirmative obligation to seek homeowners' names under Minn.Stat. § 514.011, subd. 3. The plain wording of this section illustrates that eliciting this information is optional, not mandatory.

■ We take special note that both *Stark* and *Dolder* dealt with statutory interpretation of pre-lien notice requirements prior to the 1982 amendments. In 1980, the statute defined "owner" as the "owner of any legal or equitable interest in real property * * *." Minn.Stat. § 514.011, subd. 5 (1980). It did not require knowledge on the part of the person contributing to the improvement of the property. Despite our conclusion that summary judgment was inappropriate on the issue of pre-lien notice, we are not compelled to find error in the trial court's ultimate result. *See Braaten v. Midwest Farm Shows*, 360 N.W.2d 455, 457 (Minn.Ct.App.1985).

**Post-Lien Statement**

Section 514.08 focuses on two separate questions: first, who must be served with the statement under subdivision 1(2); and second, who must be named in the state-

ment as owner under subdivision 2(6). The statement must be served on "the owner or his authorized agent or the person who entered into the contract with the contractor." Minn.Stat. § 514.08, subd. 1(2) (1982). The statement must identify the owner "according to the best information then had." *Id.* § 514.08, subd. 2(6).

In *Minnesota Wood Specialties, Inc. v. Mattson,* 274 N.W.2d 116 (Minn.1978), the lien claimant served copies of the lien statement on the vendors of a contract for deed and not on the vendees. The vendees argued that service on the vendors was erroneous because they held legal title to the property merely as security for the amount owed under the contract and were thus not "owners" within the meaning of section 514.08, subd. 1(2). The court rejected this argument, holding that:

> [S]ince the legislature did not define owner for purposes of § 514.08, the word must be held to include holders of a legal estate subject to a contract for deed. Nor did the legislature specify that owners of all estates be served. * * * [w]e also hold that a lien claimant is not required by § 514.08, subd. 1(2), to serve a copy of his statement on *all* persons having interest in the property.

*Minnesota Wood,* 274 N.W.2d at 119 (emphasis added).

By Marque's own admission, Barris recorded his deed to the property on March 2, 1983. The lien statement was not filed until May 16, 1983, more than two months after Barris became the legal owner of record. It is undisputed that only Zachman was served and identified as "owner" on the statement. Marque urges us to conclude that "according to the best information then had," Zachman was still the owner of the property and thus properly served with the post-lien statement. We decline to do so. The language relied on by Marque relates only to the name of the owner that must appear on the statement pursuant to section 514.08, subd. 2(6). It does not refer to who must be served.

In *Minnesota Wood,* the supreme court noted that the legislature has not yet defined "owner" for the purposes of subdivision 1(2). Nonetheless, we are guided by the holding in *Minnesota Wood* that a lien claimant is not required to serve a copy of his statement on *all* persons having an interest in the property. It is evident from this holding that a lien claimant must serve *someone* with an ownership interest in the property. In the present case, Zachman had no ownership interest whatsoever when Marque served its statement. As the trial court noted:

> [I]t is disingenuous to propose that compliance with [section 514.08, subd. 1(2)] is satisfied by service on one with no property interest remaining at the time of filing, while the record legal owner receives no notice whatsoever that its property is in jeopardy.

**DECISION**

Subcontractor's appeal is not moot when, as a result of its failure to post a supersedeas bond at one and one-half times the amount of the lien claim, the trial court discharged the mechanic's lien and lis pendens. The trial court properly granted summary judgment for respondents when the subcontractor failed to serve its post-lien statement on the legal owner of record or on any person with an interest in the property.

Affirmed.

FOLEY, Judge (concurring specially).

Although I concur in the majority's resolution on the merits of the case, I would dismiss the appeal as moot. It is well established that if pending an appeal, an event occurs which renders it impossible to grant any relief or which makes a decision unnecessary, the appeal will be dismissed. *In re Township of Glendale, Scott County,* 288 Minn. 340, 343, 180 N.W.2d 925, 927 (1970); *Barnes v. Macken,* 252 Minn. 412, 415, 90 N.W.2d 222, 226 (1958). Further, decisions by a court "should be limited to real controversies involving existing facts and rights asserted thereunder." *Dehning v. Marshall Produce Co.,* 215 Minn. 339, 340, 10 N.W.2d 229, 229 (Minn.1943).

A supersedeas bond is not a prerequisite to securing appellate review. *Tourville v. Tourville*, 289 Minn. 544, 185 N.W.2d 281 (1971). Rule 108.01 of the Minnesota Rules of Civil Appellate Procedure provides that proceedings in the trial court shall be stayed and save all the rights thereby affected if the appellant posts a supersedeas bond "in the amount and form which the trial court shall order and approve * * *." Moreover, upon motion, the trial court has the discretion to require the filing of a supersedeas bond "if it determines that the provisions of Rule 108 do not provide adequate security to the respondent." Minn. R.Civ.App.P. 108.01, subd. 7. *See State v. Northern Pacific Railway Co.*, 221 Minn. 400, 22 N.W.2d 569 (1946).

Here, appellant was required to file a supersedeas bond equal to 1½ times the amount of each lien claim. Appellant refused to do this despite this court's July 30, 1985 order denying appellant's motion to reduce or vacate the bond as excessive under *Sisto v. Housing and Redevelopment Authority of Duluth*, 258 Minn. 391, 104 N.W.2d 529 (1960). Further, appellant's petition for review of this decision to the supreme court was denied.

Appellant's claim that the trial court was without jurisdiction to discharge the lis pendens is similarly without merit. In *Scofield v. Scheaffer*, 104 Minn. 127, 116 N.W. 211 (1908), the trial court retained jurisdiction for purposes of executing a judgment when the appellant failed to file a supersedeas bond. Appellant should not be heard to complain when its own inaction vested the trial court with the power to discharge the lis pendens during pendency of the appeal. Minn.Stat. § 514.08 (1982) provides in part:

> The lien shall cease at the end of 90 days after doing the last of such work, or furnishing the last item of such skill, material, or machinery, unless within such period:
>
> (1) A statement of the claim therefor, be filed with the county recorder of the county in which the improved premises are situated, * * *.

The logical import of this provision is that once a lien statement is filed of record, it must be maintained of record after that time. Failure to do so is a fatal defect to a continuing claim that a mechanics lien exists. In reference to the lis pendens, Minn. Stat. § 514.12, subd. 3 (1982) provides in part:

> [A]s to a bona fide purchaser, mortgagee, or encumbrancer without notice, the absence from the record of a notice of lis pendens of an action after the expiration of the year in which the lien could be so asserted shall be conclusive evidence that the lien may no longer be enforced * * *.

Since both the mechanic's lien and the lis pendens were discharged on October 9, 1985, appellant no longer has a basis for enforcement of his claim. The issues are moot and the case should therefore be dismissed.