# M & G SERVICES, INC., et al., Respondents,

v.

# BUFFALO LAKE ADVANCED BIOFUELS, LLC, et al., Appellants,

## Minnesota Energy, Respondent,

## K & S Millwrights, Inc., Respondent,

## Beaver Creek Transport, Inc., Respondent.

### A16-1347

Court of Appeals of Minnesota.

Filed April 17, 2017

Review Denied June 28, 2017

---

278

Karl J. Yeager, Kathleen M. Ghreichi, Joseph P. Bottrell, Meagher & Geer, P.L.L.P., Minneapolis, Minnesota (for respondents M & G Services, Inc., et al.).

Katherine M. Melander, Brian W. Varland, Heley, Duncan & Melander, PLLP, Minneapolis, Minnesota (for appellants).

Mark J. Hanson, W. Teague Orgeman, Stoel Rives LLP, Minneapolis, Minnesota (for respondent Minnesota Energy).

K & S Millwrights, Inc., Buffalo Lake, Minnesota (respondent)

Kurt M. Anderson, Minneapolis, Minnesota (for respondent Beaver Creek Transport, Inc.).

Considered and decided by Schellhas, Presiding Judge; Kirk, Judge; and Bratvold, Judge.

## OPINION

KIRK, Judge

After a bench trial in this mechanic's lien foreclosure action, appellants plant owner and mortgagee argue that the district court erred in determining that the ongoing removal and distribution of thin stillage, a byproduct of an ethanol production process, was a lienable contribution to an improvement to real property. Because the continual removal and distribution of excess thin stillage from an operating ethanol plant does not contribute to an improvement to real property under the mechanic's lien statute, we reverse.

## FACTS

In January 2012, appellant-mortgagee West Ventures Platinum Partners and plant-owner Purified Renewable Energy LLC (PRE) wrote a letter of intent and paid a down payment to purchase a mothballed ethanol plant from Minnesota Energy in Renville, Minnesota. The ethanol plant had an operational capacity of producing 18 million gallons of ethanol annually. PRE hired several contractors, including respondent M & G Services Inc. (M & G), an industrial construction company, to assist with the clean-up and repair of the plant.

From the outset, the plant's structural and mechanical problems dramatically hindered its ability to produce ethanol. The plant's evaporators and cooling tower were in disrepair. In the fall of 2012, two fires damaged the plant's dryer. Collectively, these problems caused the plant to generate significant quantities of a byproduct called thin stillage. Thin stillage is a watery mixture composed of approximately

three to five percent uncondensed corn-distiller solubles. Under ideal fermentation conditions, ethanol production will create ethanol, corn syrup, dry distiller grains, and a small amount of thin stillage. But PRE's efforts to produce ethanol generated six to nine truckloads of excess thin stillage on a daily basis.

In August 2012, PRE approached the president of Revier Cattle Company, one of the largest cattle farms in the area, and proposed a bartering arrangement where PRE would haul the excess thin stillage to the Revier farm and feed it to the cattle. In return, Revier would eventually receive corn syrup from the plant to feed its cattle once the ethanol plant became fully operational.

Under the direction of PRE, M & G assisted with the delivery and distribution of the excess thin stillage to the Revier cattle farm. As creatures of habit, the cattle would consume the stillage only if it was delivered fresh and hot to their troughs at regularly scheduled feeding intervals. To assist with the round-the-clock delivery of the stillage at the Revier farm, M & G acquired a towable feed trailer and repurposed it with a pumping system so that a semi-truck could tow the trailer around the farm and deliver hot stillage to the cattle troughs. M & G installed and reworked a cover on a pit tank at Revier's farm to quell noxious fumes generated from certain excess stillage that could not be used as feed. M & G also delivered stillage to the DeLange farm, where it was also fed to cattle.

In November 9, 2012, PRE and West Ventures closed on the purchase of the plant. That same day, M & G executed and delivered a mechanic's lien waiver, stating that it had received $197,216.69 as payment for all labor, skill, and material, ex-

cept the sum of $56,584.73. West Ventures paid M & G the remaining balance of $56,584.73 from funds provided at closing and recorded its mortgage on the plant on November 15 at the Renville County Recorder's Office.

M & G's work at the Revier farm and the ethanol plant continued unabated during and after closing. On March 14, 2013, M & G recorded an amended mechanic's lien on the ethanol plant property, totaling $242,476.56, at the Renville County Recorder's Office. The lien described three noncontiguous parcel tracts in Renville County: the ethanol plant property, the Revier farm, and the DeLange farm. By the date of trial, M & G alleged that it was entitled to a lien totaling $179,025.50 [1] for labor furnished and materials supplied to the Revier and DeLange farms on behalf of PRE. M & G claimed the following lienable items: $6,397.68 for hauling the stillage from the ethanol plant to the Revier and DeLange farms; $48,338.00 for installing and reworking a pit tank cover at the Revier farm; $12,028.24 for labor and materials for the feed trailer used to distribute the stillage at the Revier farm; $66,026.00 for time spent distributing stillage from the tractor-pulled feed trailer to cattle feed troughs at the Revier farm; $41,707.94 for labor and materials related to feeding stillage to cattle at the Revier farm; $4,725.34 for supplying a transfer pump at the Revier farm; and $25,747.25 for a 1982 Brenner tank trailer. On March 25, PRE filed for Chapter 11 bankruptcy. Appellant-plant owner Buffalo Lake Advanced Biofuels LLC purchased the ethanol plant from PRE.

On December 26, M & G sued to foreclose the lien. After a two-day stipulated-facts court trial, the district court found that M & G facilitated an improvement

1. The parties settled portions of the lien prior to trial.

upon the ethanol plant property by removing the stillage to the Revier farm. It also found that M & G's lien was superior to West Ventures' mortgage lien, as the work completed by M & G was continuous in nature and West Ventures had notice of M & G's ongoing thin-stillage work both before and after it purchased the plant and recorded its mortgage on the plant property. The district court ordered the foreclosure of M & G's mechanic's lien in the amount of $179,025.20, and awarded M & G $159,750.14 in attorney fees.

Buffalo Lake and West Ventures (collectively West Ventures) moved for amended findings of fact, conclusions of law, and order for judgment, or a new trial, arguing: (1) the work completed by M & G was not a lienable improvement to the ethanol plant site; (2) the district court erred in finding that M & G's lien was superior to the West Ventures' mortgage; and (3) M & G should have filed separate mechanic's lien statements for its claims against the three noncontiguous parcels. After a hearing, the district court denied West Ventures' motion.

West Ventures appeals.

## ISSUE

Does M & G's removal and distribution of excess thin stillage contribute to the improvement of real estate by performing labor, or furnishing skill, material, or machinery for the erection, alteration, repair, or removal of any building under Minn. Stat. § 514.01?

## ANALYSIS

**M & G's removal and distribution of excess thin stillage does not constitute a lienable contribution to the improvement of the ethanol plant property under Minn. Stat. § 514.01.**

■■■ On appeal, West Ventures raises three challenges to the district court's rul-

ing. It argues that the district court erred in determining that: (1) M & G's removal and distribution of the excess thin stillage constitute a lienable contribution to the improvement of the ethanol plant property; (2) M & G offsite work was a lienable contribution to the ethanol plant property despite M & G's failure to file separate lien statements on noncontiguous parcels under Minn. Stat. § 514.09; and (3) West Ventures had actual notice of M & G's unpaid lienable work at the time West Ventures recorded its mortgage. Because the first issue is dispositive of all of the issues raised by West Ventures, we begin and end with this issue.

■■■ "Appellate [courts] set aside a district court's findings of fact only if clearly erroneous, giving deference to the district court's opportunity to evaluate witness credibility. Findings of fact are clearly erroneous where an appellate court is left with the definite and firm conviction that a mistake has been made." *Goldman v. Greenwood*, 748 N.W.2d 279, 284 (Minn. 2008) (quotation and citations omitted). We review questions of law de novo. *City of Moorhead v. Red River Valley Coop. Power Ass'n*, 830 N.W.2d 32, 36 (Minn. 2013). "A mechanic's lien provides the claimant with a non-consensual lien or security interest in the improved property." *Ryan Contracting Co. v. O'Neill & Murphy, LLP*, 883 N.W.2d 236, 243 (Minn. 2016). "Whether the work done was an improvement within the contemplation of [Minn. Stat. § 514.01] is a mixed question of law and fact." *Kloster-Madsen, Inc. v. Tafi's, Inc.*, 303 Minn. 59, 63, 226 N.W.2d 603, 607 (1975).

The district court found that M & G facilitated an improvement upon the property of the ethanol plant property by removing the excess thin stillage offsite to the Revier farm. The district court noted

that the "sharp increase in the amount of liquids that needed to be transported was the result of malfunctions of the ethanol plant" and, as a result of the plant's various operational issues, it could not operate "[a]bsent a method to deliver the liquid offsite." Relying on *Kloster-Madsen*, and the dictionary definition of "improvement," the district court concluded that M & G's improvements satisfied the statute, despite the fact that they were not visible on or incorporated into the ethanol plant property. *See* 303 Minn. at 64, 226 N.W.2d at 607.

■ For over 100 years, Minnesota courts have recognized that the mechanic's lien statute "is very broad in respect to creating and preserving the lien for labor and skill." *Emery v. Hertig*, 60 Minn. 54, 57, 61 N.W. 830, 831 (1895). "While the Mechanic's Lien Act is to be liberally construed as a remedial act, yet mechanics' liens exist only by virtue of the statute creating them, and such statutes must be strictly followed with reference to all requirements upon which the right to a lien depends." *Dolder v. Griffin*, 323 N.W.2d 773, 780 (Minn. 1982) (quotation omitted).

■ Minn. Stat. § 514.01 states that:
Whoever ... contributes to the improvement of real estate by performing labor, or furnishing skill, material or machinery for any of the purposes hereinafter stated ... shall have a lien upon the improvement, and upon the land on which it is situated or to which it may be removed, that is to say, for the erection, alteration, repair, or removal of any building. ...
The statutes goes on to list additional purposes, such as excavating, grading, and laying or repairing sidewalk, none of which are applicable here. Minn. Stat. § 514.01. "[T]his statute makes any contribution to real property of labor, skill, material, or machinery for any purpose specified, which includes the alteration of any building, an improvement." *Kloster-Madsen*, 303 Minn. at 63-64, 226 N.W.2d at 607. But a lien claimant seeking to establish a right to a lien must "show that the real estate has been improved, that he supplied labor or materials, and that labor or materials were supplied for one of the purposes stated in the statute." *Anderson v. Breezy Point Estates*, 283 Minn. 490, 494, 168 N.W.2d 693, 696 (1969).

West Ventures argues that the lienable items claimed by M & G do not fall within the scope of any of the purposes listed in Minn. Stat. § 514.01. The parties do not dispute the fact that the ongoing removal of excess thin stillage from the plant property was essential to the continued operation of the ethanol plant.

Whether the removal of a byproduct generated from the operation of a business constitutes an improvement to real property under Minn. Stat. § 514.01 is a matter of first impression in Minnesota. The plain language of the statute, listing types of work that constitute improvements to real property, does not include removal or distribution of a byproduct of plant operations. M & G argues that removal of the excess thin stillage was necessary for the ethanol plant to be repaired and restored to full operational capacity. Applying the language of the statute, M & G asserts that the labor and materials used to haul away and dispose of stillage contributed to improvement of the ethanol plant property because it facilitated the "alteration [or] repair ... of any building" under Minn. Stat. § 514.01.

■ We conclude that the district court erred in enforcing M & G's lien against West Ventures because Minnesota law does not recognize the removal of a byproduct generated from the operation of a business as an improvement to real property under the statute. "The determination

that a mechanics lien lies only where the work done is for certain specified purposes has been made by the legislature and we are not free to disregard that determination." *Anderson*, 283 Minn. at 495, 168 N.W.2d at 697. Here, the record established that the ethanol-production process would always generate some amount of thin stillage, and, in this case, the plant's operational issues contributed to excess quantities of thin stillage. Nevertheless, M & G was essentially removing PRE's business waste from the plant property. We do not agree that the fact the plant produced excess quantities of stillage to be relevant to our analysis because there are natural ebbs and flows in the amounts of waste that a business will generate over time. This case is essentially no different from a hospital that removes its hazardous waste and garbage on a regular basis in order to continue operations, or a restaurant that has its garbage removed from the premises every day. Accordingly, we conclude that the removal of the excess stillage does not constitute an "alteration" or "repair" of a building that improves the real estate under which the ethanol plant sits.

M & G relies on *Johnson v. Starret* to argue that the labor and materials contributed to haul the excess thin stillage away from the plant are lienable under the statute even though they were never physically incorporated into the plant property. 127 Minn. 138, 149 N.W. 6 (1914). In *Johnson*, the Minnesota Supreme Court concluded that fuel and a portable steam-power excavating machine used to excavate earth from a parcel of land for the purpose of constructing an office were lienable items. 127 Minn. at 142-43, 149 N.W. at 8.

*Johnson* is inapposite. The labor and materials furnished in that case were used to excavate real estate, which is one of the specific purposes of Minn. Stat. § 514.01,

and the property was improved by the construction of a building. 127 Minn. at 142-43, 149 N.W. at 8; *see also Albert & Harlow Inc. v. Great N. Oil Co.*, 283 Minn. 246, 248, 167 N.W.2d 500, 503 (1969) ("It has been held in Minnesota that one supplying material such as petroleum products to a builder who uses such products while engaged in the construction of the improvement is a person furnishing lienable materials within the meaning of the statute."). The same cannot be said for the ethanol plant property, as the labor furnished and materials supplied to haul away the stillage did not fall within one of the specific purposes of the statute, and the record does not show that the plant property's value was enhanced by the removal of the thin stillage.

M & G's remaining liens, which arise from materials furnished and labor supplied to distribute the excess stillage on the Revier farm, are also unenforceable. We are bound to adhere to the legislatively determined limits of the mechanic's lien law, which do not provide a basis for a mechanic's lien for these activities. *Anderson*, 283 Minn. at 495, 168 N.W.2d at 697.

## DECISION

The removal and distribution of excess thin stillage that is generated through the ongoing production of ethanol is not an improvement to real property under Minn. Stat. § 514.01 because the removal and distribution do not contribute to the improvement of the ethanol plant property. Therefore, no lien attaches under Minn. Stat. § 514.05, subd. 1.

**Reversed.**