**NORTHWEST WHOLESALE LUMBER, INC., Respondent,**

v.

**The CITADEL COMPANY, et al., Defendants,**

**Builders Finance, Inc., Appellant,**

**Darlis Gray, d/b/a Interiors and Walls by DAR, Genz-Ryan Plumbing & Heating Company, intervenor, Respondent.**

**No. C2–87–525.**

Court of Appeals of Minnesota.

Nov. 24, 1987.
Review Denied Feb. 12, 1988.

Peter J. McCall, Stapleton, Nolan & McCall, St. Paul, for Northwest Wholesale Lumber, Inc.

Gerald G. Workinger, Jr., Brenner, Workinger & Thompson, Minneapolis, for Builders Finance, Inc.

James A. Fridland, Minneapolis, for Darlis Gray, d/b/a Interiors and Walls by DAR.

Kevin P. Carroll, McMenomy, Severson, Sheldon, Sovis & Dusich, Rosemount, for Genz-Ryan Plumbing & Heating Company, intervenor.

Heard, considered and decided by POPOVICH, P.J., and LESLIE and RANDALL, JJ.

## OPINION

RANDALL, Judge.

In mechanics' lienholder's action, the trial court entered judgment in favor of Northwest Wholesale Lumber, Inc. (NWL), Darlis Gray, (doing business as Interiors & Walls by DAR) (DAR), and Genz-Ryan Plumbing & Heating Co. (Genz-Ryan), all of whom claimed mechanics' liens against property upon which appellant Builders Finance, Inc. (BFI) held a mortgage. Appellant moved for amended or additional findings of fact and conclusions of law, or for a new trial. The motion was denied. NWL moved for amended findings of fact. The trial court granted the motion. BFI appeals the denial of its new trial motion, and the judgment. We reverse and remand.

## FACTS

On February 24, 1984, The Citadel Company (Citadel) purchased a parcel of land containing lot 7, the property at issue here.

On February 24, 1984, appellant BFI filed a mortgage, which was executed and delivered on that day by Citadel. Citadel subsequently commenced development of the property. David Nichols, a self-em-

ployed excavator, testified he commenced "exploratory work," including digging and removal of trees around February 18, 1984.

Early in 1984, NWL entered into an understanding with Citadel that materials would be shipped as Citadel ordered them, and an invoice sent out for the amount received. NWL did not have a written contract with Citadel. NWL began delivering materials to lot 7 on April 18, 1984. The last shipment was made May 29, 1984.

DAR agreed to wallpaper the dining room and kitchen of the house constructed on lot 7. The work was done on June 24 and 25, 1984. Genz-Ryan began to install heating and plumbing in the house on lot 7 on June 1, 1984. The last date on which Genz-Ryan rendered services on lot 7 was August 28, 1984.

On December 11, 1984, Citadel filed a petition for relief in bankruptcy court. On March 8, 1985, the bankruptcy court entered an order lifting the automatic stay with respect to appellant's claim on its mortgage. On June 11, 1985, appellant foreclosed on the mortgage. At the foreclosure sale appellant was the purchaser. The property was not redeemed during the redemption period.

In April 1985, NWL commenced a mechanics' lien action. Genz-Ryan and DAR asserted liens in their crossclaims. Citadel did not appear at trial. The trial court entered judgment for NWL, DAR, and Genz-Ryan against Citadel, and found the rights of these three lienholders to be prior and superior to the interests of all other defendants, including appellant, the mortgagee. The trial court ordered the foreclosure of the liens and the sale of the property to satisfy them.

Appellant moved for amended or additional findings or a new trial. The motion was denied. NWL moved for amended findings, including a finding that NWL's filing of its lien statement 121 days after the last day of contribution constituted excusable neglect under Minn.R.Civ.P. 6.02, and therefore constituted timely filing. The trial court granted NWL's motion. BFI appeals the entry of judgment and the denial of its post-trial motions.

## ISSUES

1. Did the trial court err by concluding NWL had a valid mechanics' lien, although the lien statement was filed 121 days after NWL had provided the last service?

2. Was the trial court's finding that respondents gave the required pre-lien notice clearly erroneous?

## ANALYSIS

### I.

*Late filing of lien statement*

Mechanics' lien laws did not exist under common law, but are created by statute. *Armco Steel Corp., Metal Products Division, v. Chicago & North Western Railway Co.,* 276 Minn. 133, 149 N.W.2d 23 (1967). There must be substantial statutory compliance before liens can be perfected. However, if a construction is permissible that will sustain a lien, it is preferred to one that will invalidate it. *Id.*

■ Proof of timeliness of filing is an essential part of the mechanics' lien claim. *Bloomington Electric Co. v. Freeman's, Inc.,* 394 N.W.2d 605, 607 (Minn.1986), *pet. for rev. denied* (Minn. Dec. 17, 1986).

The lien ceases at the end of 120 days after doing the last of the work, or furnishing the last item of skill, material, or machinery, unless within this period,

(1) a statement of claim is filed * * *; and

(2) a copy of the statement is served * * * on the owner or his authorized agent or the person who entered into the contract with the contractor.

Minn.Stat. § 514.08, subd. 1 (Supp.1983).

Appellant contends NWL was not entitled to recover because its mechanics' lien ceased to exist when its lien statement was not filed within 120 days of the last day on which materials were delivered to lot 7.

NWL contends appellant raised the late notice issue for the first time in its post-trial motion for amended findings, and is therefore precluded from asserting the is-

sue now. In its complaint, NWL asserted the following:

> 28. That on the 27th day of September, 1984, within 120 days after furnishing the last time of materials for the improvement of Lot 7, Block 1, Briar Creek Addition, the plaintiff filed * * * its verified Lien Statement * * *.

Appellant contends its answer, which contained an express denial of allegations 14 through 30 of NWL's complaint, and an affirmative allegation that NWL failed to comply with the provisions of Minn.Stat. §§ 514.01–514.17 (1982 and Supp.1983), sufficiently raised the issue. We agree.

Mechanics' lien laws are to be liberally construed so as to protect the rights of workers and those who furnish labor and material for the improvement of real estate. *Minnesota Wood Specialties v. Mattson*, 274 N.W.2d 116, 119 (Minn.1978). However, they must be strictly followed with reference to all requirements upon which the right to a lien depends. *Dolder v. Griffin*, 323 N.W.2d 773, 780 (Minn. 1982). Timeliness of filing is an essential element the lienholder must prove to establish its claim. *Bloomington Electric Co.*, 394 N.W.2d at 607.

Here, the trial court found NWL made its last contribution on May 29, 1984, and filed its mechanics' lien statement September 27, 1984. Under Minn.Stat. § 514.08, subd. 1, Northwest Lumber's lien ceased to exist after September 26, 1984. *Lesmeister v. Dilly*, 330 N.W.2d 95, 101 (Minn.1983); *Hayle Floor Covering, Inc., v. First Minnesota Construction Co.*, 253 N.W.2d 809, 813 (Minn.1977) (lien filed beyond statutory time limit must be held invalid). The trial court erred when it found NWL had a valid lien.

The trial court attempted to extend the statutory deadline by granting NWL's motion under Minn.R.Civ.P. 6.02. Minn.R.Civ. P. 6.02 provides:

> When by statute * * * an act is required or allowed to be done at or within a specified time, the court for cause shown may, at any time in its discretion, * * * (2) upon motion made after the expiration of the specific period permit the act to be done where the failure to act was the result of excusable neglect * * *.

The rules of civil procedure do not, however, apply where they conflict with mechanics' lien law.

> These rules do not govern pleadings, practice and procedure in the statutory and other proceedings ( [under §§ 514.-01–.17] * * * insofar as they are inconsistent or in conflict with the rules.)

Minn.R.Civ.P. 81.01(1). Rule 6.02 conflicts with the statute; its application here would frustrate the essential purpose of statutory time limits in mechanics' lien law.

In *Guillaume & Associates v. Don-John Co.*, 336 N.W.2d 262 (Minn.1983), the supreme court held that excusable neglect was sufficient reason to permit untimely filing of an answer, and that Rule 6.02 was not inconsistent with Minn.Stat. § 514.11 (1982). The trial court here relied on this finding to conclude that Rule 6.02 also could be used to extend the time for perfecting a mechanics lien under Minn.Stat. § 514.08. We disagree. The untimely *filing* of an answer differs from the untimely *perfection* of a mechanics' lien. Minn.Stat. § 514.08 specifically states: "The lien *ceases after 120 days* * * * unless * * * a statement of claim is filed * * *."

An extension of the time limit, as here, permits the trial court to revive a claim that has long ceased to exist. In this case, the lien ceased to exist on September 27, 1984, but was revived on February 23, 1987, almost two and one half years later.

Unlike Minn.Stat. § 514.11, which is liberally construed to protect those who furnish material or services for the improvement of property, time limitations under Minn.Stat. § 514.08, subd. 1, are strictly construed, based on a policy of protecting owners and purchasers from unfair surprise by fixing a definite time when the liens should terminate. *Guillaume*, 336 N.W.2d at 264. Those interested in the property should be able to know with certainty when the property is free of lien claims. *Guillaume*, 336 N.W.2d at 264. The supreme court found this policy did not conflict with Rule 6.02 because:

The unfair surprise from which prospective purchasers of property are to be protected is that of unknown liens; the time for filing answers to such adverse claims against the property is of little import in making the decision to purchase.

*Id.*

In this case, however, application of Minn.R.Civ.P. 6.02 to permit extension of the time limit more than two years after the lien has ceased to exist conflicts with the basic purpose of time limits for filing a lien statement. We hold the trial court erred by applying Minn.R. 6.02 to extend the time limit to file a lien statement.

## II.

*Failure of pre-lien notice*

■ Appellant also contends respondents did not serve Citadel with pre-lien notice. Pre-lien notice provisions are strictly construed to favor the owner. *Dolder,* 323 N.W.2d at 780. Mechanics' lien laws are construed strictly with respect to the requirements upon which the right to a lien depends. *Id.*

Appellant claims respondents engaged several subcontractors and materialmen, and thus should have provided Citadel with notice as described in Minn.Stat. § 514.011, subd. 1 (Supp.1983). In view of our holding on the first issue, this question is moot with respect to Northwest Lumber's lien.

The trial court found that notice under chapter 514 was either not required or was given. Respondents contend appellant is estopped from asserting lack of pre-lien notice because it did not comply with NWL's request, in its interrogatories, for any support for a claim that respondents were required to give it pre-lien notice. *See Boldt v. Sanders,* 261 Minn. 160, 111 N.W.2d 225 (1961) (evidence must be brought to light to enable parties to adequately prepare for trial).

Appellant's answer to NWL's complaint alleged lienholder noncompliance with "§ 514.01 et seq." The transcript indicates that, at trial, appellant asked whether pre-lien notice was given. There were no ob-

jections. There was testimony that no notice was given, since allegedly none was required because the contractor and owner were one and the same. Furthermore, Genz-Ryan's two "pre-lien notices" were introduced. We hold the issue was litigated by consent. *See Nor-Son, Inc. v. Nordell,* 369 N.W.2d 575, 578 (Minn.Ct.App. 1985), *pet. for rev. denied* (Minn. Sept. 13, 1985) (citing *Hohenstein v. Goergen,* 287 Minn. 512, 176 N.W.2d 749, 751 (1970)).

■ Genz-Ryan claimed it gave pre-lien notice by printing the language required by § 514.011 on the back of a heating proposal and a plumbing proposal mailed to Citadel. The proposals were introduced at trial. Appellant contends the notice given by Genz-Ryan was inadequate because, absent a written contract, the notice should have been served separately, and could not be sent by first class mail. Minn.Stat. § 514.011, subd. 1. Furthermore, appellant claims the notice was defective because it inaccurately reflected pre-amendment language of the statute giving the lienholder 90 days to assert a claim, instead of the post-amendment 120 days after completion of the improvement. We agree that due to this inaccurate reflection of the statutory language, the notice was inadequate. *See Dolder,* 323 N.W.2d at 780 (pre-lien notice provisions strictly construed).

■ However, the issue remains whether notice was required under Minn.Stat. § 514.011, subd. 1 (Supp.1983):

Every person who enters into a contract with the owner for the improvement of real property and who has contracted or will contract with any subcontractors or materialmen to provide labor, skill or materials for the improvement shall include in any written contract with the owner the notice required in this subdivision * * *.

A person who fails to provide the notice shall not have the lien and remedy provided by this chapter.

This notice is not required of any person who is an owner of improved real estate, to any corporate contractor of which the owner is an officer or controlling shareholder,

to any contractor who is an officer or controlling shareholder of a corporation which is the owner of the improved real estate, or to any corporate contractor managed or controlled by substantially the same persons who manage or control a corporation which is the owner of the improved real estate. *Id.* Additionally,

> [t]he notice required by this section shall not be required to be given where the contractor is managed or controlled by substantially the same persons who manage or control the owner of the improved real estate.

Minn.Stat. § 514.011, subd. 4a (1982 and Supp.1983). *See also Simonson Cashway Co., Inc. v. Merickel Construction Co., Inc.,* 391 N.W.2d 903, 906 (Minn.Ct.App. 1986) (normally subcontractor is required to give notice to the same owners as is the general contractor; however, general contractor who is not owner need not give notice to self).

· The central issue in determining whether pre-lien notice was required here is whether Citadel was both "owner" and "contractor" within the meaning of the statute's exclusions. Respondents contend they were not required to give pre-lien notice, because Citadel was both the owner and the contractor, and because respondents were not contractors under the statute. They claim the testimony at trial indicates that Citadel was both general contractor and owner. Therefore, respondents argue no pre-lien notice was necessary.

Whether Citadel was acting as its own general contractor is a question of fact. The trial court's determination of whether an owner is a contractor is subject to the "clearly erroneous" standard of review. *Pelletier Corp. v. Chas. M. Friedheim Co.,* 383 N.W.2d 318, 321 (Minn.Ct.App.1986), *pet. for rev. denied* (Minn. May 16, 1986). In *Pelletier,* this court affirmed the trial court's finding that a developer who owned the property in question during the entire time at issue was also a contractor. The trial court set out the following reasons for its decision: (1) the developer entered into separate contracts for the jobs to be done; (2) the developer supervised the work at the project sites; (3) the developer applied for building permits, and the permits indicated the developer was the contractor. *Id.* at 321–322.

Here, the trial court made no specific finding that Citadel was a contractor as well as an owner. The finding that the pre-lien notice was either given, or was not required, is not sufficient to enable this court to determine whether the trial court erred. We therefore reverse and remand for additional findings on this issue.

Since we reverse on the issues of pre-lien notice and the statement of claim, we do not address other issues raised.

## DECISION

1. The trial court erred by finding respondent NWL's statement of claim, filed 121 days after completion of NWL's contribution, was timely.

2. The insufficient findings on the issue of pre-lien notice do not support the trial court's holding that respondents Genz-Ryan and DAR had enforceable mechanics liens. We remand for a further record on the applicability of Minn.Stat. § 514.011, subds. 1 and 4a.

Reversed and remanded for additional findings.