**John KLINGELHUTZ, d/b/a Construction Millwork Co., Appellant,**

**v.**

**WOODSMEN CONSTRUCTION, INC., et al., Defendants,**

**James R. Somers, Lyons Mortgage Corp., Respondents.**

**No. C2–89–1808.**

Court of Appeals of Minnesota.

May 8, 1990.

Review Denied July 13, 1990.

---

**99**

Curtis D. Smith, Reese E. Chezick, Moss & Barnett, P.A., Minneapolis, for Lyons Mort. Corp.

Considered and decided by SHORT, P.J., and NORTON and MULALLY,* JJ.

## OPINION

EDWARD D. MULALLY, Judge.

On July 21, 1989, following a bench trial, the trial court found that John Klingelhutz had a valid mechanics' lien against the property in the amount of $2,276.10, but that his $31,099.09 mechanics' lien failed to attach. Further, the trial court found the valid mechanics' lien to be inferior to Lyons Mortgage Corporation's mortgage covering the property. The trial court awarded Klingelhutz $60,595.05 in damages against the contractor, Woodsman Construction, Inc. Klingelhutz appeals.

## FACTS

John Klingelhutz does business as both Construction Millwork Company and True Value Building Center. On November 23, 1984, Klingelhutz began supplying materials to Woodsmen Construction, Inc. Woodsmen was building a single family house on property owned by Chowen Development Company. On December 10, 1984, Klingelhutz sent a pre-lien notice by certified mail to both Chowen and Woodsmen. The text of the pre-lien notice followed the requirements of Minn.Stat. § 514.011, subd. 2 (1984) with one exception. The statute required the notice to state, *inter alia:*

> To protect yourself, Minnesota law permits you, as the owner, to withhold from your contractor as much of the contract price as may be necessary to meet our demands, pay us directly and deduct the cost of them from the contract price, or withhold the amount of our claim from your contractor until the expiration of *120 days* from the completion of the improvement unless your contractor furnishes to you a waiver of claim for mechanics' liens signed by me (us).

Mac R. Willemssen, Melchert, Hubert, Sjodin and Willemssen, Chaska, for appellant.

T. Chris Stewart, C. Scott Massie, Johnson, Wood, Phleger & Bigelow, Wayzata, for James R. Somers.

* Acting as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 2.

*Id.* (emphasis added). The pre-lien notice sent by Klingelhutz said "90 days," rather than "120 days."

Klingelhutz continued to supply materials to Woodsmen until July 25, 1985. At that point, Klingelhutz had provided $31,049.09 worth of materials to Woodsmen. On November 20, 1985, Klingelhutz filed a mechanics' lien for $31,049.09.

On May 14, 1985, Chowen, by warranty deed, transferred the property to Steven and Karen Mueffelman. On December 16, 1985, the Mueffelmans transferred the property to James and Mary Kay Somers by warranty deed, thereby making the Somers fee owners of the property. At time of purchase, the Somers mortgaged the property to Lyons Mortgage Corporation. The mortgage was recorded on December 30, 1985.

Between December 13, 1985 and July 9, 1986, Klingelhutz provided an additional $2,276.10 worth of materials to the property. The materials were used to construct bedrooms in the basement.

On October 1, 1986, Klingelhutz filed a second mechanics' lien for $33,316.19. This lien was to cover the $31,049.09 in materials used to build the house, and provided between November 24, 1984 and July 25, 1985, plus the $2,276.10 in materials for finishing the basement, and provided between December 13, 1985 and July 9, 1986. On June 29, 1987, Klingelhutz served a summons and complaint and a notice of lis pendens to commence foreclosure on his second mechanics' lien. Klingelhutz never acted on his first mechanics' lien.

After a trial, on July 21, 1989, the trial court found Woodsmen liable to Klingelhutz for $60,595.05. This included the $31,049.09 in materials supplied between November 23, 1984 and July 25, 1985, plus one and one-half percent per month interest as provided by contract. Because the trial court also found that the materials provided by Klingelhutz were for two separate jobs, and because the first mechanics' lien was not foreclosed in a timely manner, the trial court concluded Klingelhutz' second mechanics' lien would only survive in the amount of $2,276.10, the value of the sec-

ond job. The trial court also added attorney fees, costs, and disbursements to the mechanics' lien. Further, the trial court determined that Lyons' mortgage had priority over Klingelhutz' mechanics' lien.

## ISSUE

Did Klingelhutz satisfy the pre-lien notice requirements of Minn.Stat. § 514.011, subd. 2 (1984)?

## ANALYSIS

■ Under Minn.Stat. § 514.011, subd. 2 (1984), a subcontractor or materialman who is entitled to a mechanics' lien shall give to the owner of the property, within 45 days of first providing materials, a written notice which must state, *inter alia:*

> To protect yourself, Minnesota law permits you, as the owner, to withhold from your contractor as much of the contract price as may be necessary to meet our demands, pay us directly and deduct the cost of them from the contract price, or withhold the amount of our claim from your contractor until the expiration of *120 days* from the completion of the improvement unless your contractor furnishes to you a waiver of claim for mechanics' liens signed by me (us).

(Emphasis added.)

The mechanics' lien statute is strictly construed in determining whether the mechanics' lien attaches. *Enviro–Fab, Inc. v. Blandin Paper Co.*, 349 N.W.2d 842, 846 (Minn.App.1984). "The pre-lien notice is no mere technicality. Failure to give the notice defeats the mechanics' lien. *There must be strict compliance* with the pre-lien notice statutory requirements." *Merle's Construction Co., Inc. v. Berg*, 442 N.W.2d 300, 302 (Minn.1989) (emphasis added).

In 1983, the Minnesota Legislature amended Minn.Stat. § 514.011, subd. 2 to state "120 days" instead of "90 days." *See* Minn.Laws 1983, ch. 296, §§ 1 and 2. In *Northwest Wholesale Lumber, Inc. v. Citadel Co.*, 415 N.W.2d 399, 403 (Minn.App. 1987), *pet. for rev. denied* (Minn. Feb. 12, 1988), the pre-lien notice used the pre-

amendment language, "90 days," rather than the proper "120 days." The *Citadel* court said:

> Furthermore, appellant claims the notice was defective because it inaccurately reflected pre-amendment language of the statute giving the lienholder 90 days to assert a claim, instead of the post-amendment 120 days after completion of the improvement. We agree that due to the inaccurate reflection of the statutory language, the notice was inadequate.

*Id.*

Apparently recognizing that inequities could sometimes result under the existing statute, the Minnesota Legislature, in 1989, added subparagraph (b) to Minn.Stat. § 514.011, subd. 2.

> A person entitled to a lien does not lose the right to the lien for failure to strictly comply with this subdivision if a good faith effort is made to comply, unless the owner or another lien claimant proves damages as a direct result of the failure to comply.

Minn.Stat. § 514.011, subd. 2(b) (Supp. 1989).

Even assuming the amendment might benefit Klingelhutz, it did not become effective until August 1, 1989, and applies only to notices given on or after that date. *See* Minn.Laws 1989, Chap. 160, § 5. Because Klingelhutz gave his pre-lien notice in 1984, he was required to comply strictly with the pre-lien notice statute as it existed at that time. He failed to do so.

■ Klingelhutz argues that he was not required to give Chowen a pre-lien notice, so that even though the notice he gave may have been defective, it did not serve to destroy his lien.

A pre-lien notice must be given to the "owner" of the property. Minn.Stat. § 514.011, subd. 2 (1984).

> For the purposes of this section, "owner" means the owner of any legal or equitable interest in real property whose interest in the property (1) is known to one who contributes to the improvement of the real property, or (2) has been recorded or filed for record if registered land, and who enters into a contract for the improvement of the real property.

Minn.Stat. § 514.011, subd. 5. Klingelhutz claims Chowen was not the "owner" because it did not contract to improve the property. Klingelhutz interprets Minn. Stat. § 514.011, subd. 5, so that the last clause, "and who enters into a contract for the improvement of the real property," modifies both subclauses (1) and (2).

This is a strained interpretation. First, if the legislature intended the last clause to modify both subclauses, it could have written the statute to say so. Second, based on general principles of statutory construction, the last clause modifies only subclause (2). Third, a requirement that a known owner must contract to improve the property before being entitled to a pre-lien notice makes no sense. The purpose of the pre-lien notice is to protect "owners" so that they may act to clear the lien. In fact, it is the "owner" who does not contract with the materialman to improve the property who has the greatest need for a pre-lien notice. *See Mill City Heating & Air Conditioning Co. v. Nelson*, 351 N.W.2d 362 (Minn.1984).

In this case, Klingelhutz clearly knew Chowen was the owner as of December 1984, the time when pre-lien notice was necessary. In fact, Klingelhutz sent a pre-lien notice to Chowen in December 1984. Unfortunately for Klingelhutz, it was facially defective. Therefore, Klingelhutz' mechanics' liens must fail.

Moreover, the trial court found Klingelhutz' mechanics' lien survived in the amount of $2,276.10. We disagree. Because Klingelhutz believed that all of the materials he supplied were for one job, he failed to send a pre-lien notice to support his second mechanics' lien. Because Klingelhutz' second mechanics' lien was supported by the defective pre-lien notice, the second lien must fail.

Klingelhutz' pre-lien notice was defective because it stated the pre-amendment language of "90 days," rather than the post-amendment language of "120 days." The pre-lien notice requirement, prior to August 1, 1989, is strictly construed against the

materialman and in favor of an owner of property; and an error such as appears in Klingelhutz' pre-lien notice, will defeat the entire mechanics' lien. Accordingly, we are compelled to reverse the trial court's grant of a mechanics' lien, and attorney fees in Klingelhutz' favor. The award of costs and disbursements cannot remain as part of any lien, but shall be added to the money judgment against Woodsman. We otherwise affirm the trial court's judgment.

## DECISION

Strict compliance with statutory requirements is mandatory as to pre-lien notices required and given prior to August 1, 1989. Klingelhutz did not comply strictly with the statutory requirements and his mechanics' lien did not attach to the property.

Affirmed in part and reversed in part.