POLIVKA LOGAN DESIGNERS, INCORPORATED v.
AL ENDE, d.b.a. A & E CEMENT & MASONRY
COMPANY AND OTHERS.
FABCON, INC., APPELLANT.
PRECISION ENGINEERING COMPANY,
RESPONDENT.

251 N. W. 2d 851.

February 18, 1977—Nos. 46606, 47089.

*Moore, Costello & Hart* and *Larry A. Hanson,* for appellant.
*John M. Janes,* for respondent.

Heard before Rogosheske, Peterson, and Kelly, JJ., and considered and decided by the court en banc.

KELLY, JUSTICE.

Appellant, Fabcon, Inc., appeals from summary judgment entered in Hennepin County District Court dismissing its mechanics lien. We reverse.

The facts are uncontroverted. Fabcon was a subcontractor that furnished precast concrete structural members för the expansion of a commercial building owned by respondent, Precision Engineering Company. Precision Engineering engaged Al Ende, doing business as A & E Cement & Masonry Company, as general contractor for the construction work. Polivka Logan Designers, Inc., also subcontracted with Al Ende and provided architectural services for the project. The addition to the building, completed during the summer of 1974, increased its usable floor space from approximately 6,000 square feet to approximately 11,415 square feet.

Both Fabcon and Polivka filed mechanics liens against the property and neither was paid for its work. In June 1975, Polivka brought the instant action to foreclose its lien. In a cross-claim Fabcon sought, inter alia, foreclosure of its lien. Precision Engineering moved for summary judgment dismissing Fabcon from the action and dismissing its mechanics liens.[1] The trial court granted the motion on the ground that each subcontractor had failed to give Precision Engineering the notice required by Minn. St. 514.011, thereby engendering the issue to be resolved on this appeal.

Minn. St. 514.011, enacted in 1973, requires that contractors and subcontractors provide an owner written notice of the possibility of subcontractor's mechanics liens and of the procedures

---

[1] The other defendants to the action were Al Ende, the general contractor; Heberg & Sons Co., a subcontractor that gave the notice required by Minn. St. 514.011 and whose lien was satisfied by Precision Engineering; Steel Structures, Inc., a subcontractor whose lien was also dismissed by the trial court; Citizens State Bank of St. Louis Park, a mortgagee of the property; and Aetna Business Credit, Inc.

owners might pursue to prevent loss of their property.[2] The giving of notice is "a necessary prerequisite to the validity of any claim or lien." Minn. St. 514.011, subd. 2. The evident purpose of the statute was to alert a property owner to the risk of double liability if his contractor failed to pay its subcontractors. See, also, Spannaus, *Mechanic's Lien Law Reform*, 41 Hennepin Lawyer 10; Nygren, *Mechanics Lien Laws as Amended by the 1973 Minnesota Legislature*, 42 Hennepin Lawyer 8. Not all owners, however, are entitled to receive notice. Minn. St. 514.011, subd. 4, provides:

"The notice required under this section shall not be required

---

[2] Minn. St. 514.011, subd. 2, requires that subcontractors provide the following notice:

"NOTICE OF OWNER

To: (name and address of owner)

"We are authorized by law to provide you with this NOTICE. Your failure to read it carefully could result in unnecessary expense to you or in the loss of your ............... at ..........................
                    (type of property)    (address of property)

"We, ...................., have been hired by your CONTRACTOR,
      (name and address)
      (of subcontractor)

.................... to provide ................. for use in improv-
(name of contractor)        (type of service)
                 (or material)

ing your property. We estimate our charges will be .................
                    (value of service)
                    (or material)

If we are not paid by your CONTRACTOR, we can file a claim against your property for the price of our services unless you have ALREADY paid your CONTRACTOR in full. ENFORCEMENT OF OUR CLAIM COULD MEAN THE LOSS OF YOUR PROPERTY IF YOU ARE UNABLE TO PAY US FOR OUR SERVICES.

"To protect yourself, Minnesota law allows you to either:

"1. Withhold payment to your CONTRACTOR for up to 90 days from the completion of the improvement or until he provides you with a waiver of claim from us which states that we will not file a claim against your property; or

"2. Pay us directly and deduct the amount paid from the amount you owe your CONTRACTOR."

to be given * * * in connection with an improvement to real property *consisting of or providing* (i) more than four family units and the improvement is wholly residential in character, or (ii) more than 10,000 *total* usable square feet of floor space and the improvement is partly or wholly nonresidential in character." (Italics supplied.)

Since appellant did not give notice, the applicability of subdivision 4 governs this appeal.

Appellant contends that the last exception is applicable here since the usable floor space of the commercial building after the construction work was greater than 10,000 square feet. The trial court disagreed, stating: "The word 'improvement' in the statute does not refer to the final integrated end product but only to the actual addition of some improvement to a particular parcel of real estate."

Unfortunately, we cannot agree with the district court's interpretation of § 514.011, subd. 4. We interpret "improvement" as appellant does and construe the exception to apply to partly or wholly nonresidential structures that contain more than 10,000 usable square feet of floor space either before or after the construction work in question. This interpretation appears to be the most reasonable meaning to be attributed to the language in subdivision 4, and, in addition, other considerations support our conclusion.

Section 514.011 was intended to protect homeowners and small businessmen who out of ignorance might be forced to pay first the contractor and then the subcontractor. Subdivision 4 in relevant part was the legislature's designation of larger businessmen who do not require such protection. An interpretation of "improvement" that includes only the floor space provided by the work in question appears to confound the legislature's design. An example of this flaw would be an existing one-million-square-foot building which a contractor improves by adding a new addition consisting of 9,000 usable square feet of floor space. Under the trial court's interpretation, the owner of the building would

be entitled to notice. Another example: Assume an electrical contractor rewired and furnished other labor and materials on an existing building containing 40,000 square feet of usable space. He would be required to give notice to the owner or lose his lien rights. This would not be so if he did the same work in the initial construction of a new building of 10,000 or more square feet of usable space. We do not think the legislature intended these incongruous and unreasonable results. Minn. St. 645.17(1). Moreover, there is no significant reason for distinguishing an owner of a building the floor space of which is increased to more than 10,000 square feet by new construction work and an owner who initially constructs a building of the same size and who would not be entitled to notice. Admittedly, the legislative demarcation at 10,000 square feet of floor space is somewhat arbitrary (as are all such classifications), but that demarcation must nevertheless be interpreted reasonably. The interpretation we adopt is at the least consistent with the legislative history of § 514.011, subd. 4.[3]

We do not think our interpretation is inconsistent with the statutory language. The work, labor and materials, were furnished and performed "in connection with an improvement to real property consisting of or providing * * * more than

---

[3] The legislative history of subdivision 4 is somewhat sketchy. As originally introduced in the legislature, the exception stated: "The notice, required under this section shall not be required to be given by mechanics, laborers and materialmen furnishing labor, skill or materials for an improvement of real property in any case where more than four family living units are to be provided or added by such work of improvement, if the improvement is wholly residential in character, or *in any case where more than 10,000 total usable square feet of floor space is to be provided or added by such work of improvement,* if the improvement is partly or wholly nonresidential in character." Senate File 6, § 2, subd. 3; House File 711, § 2, subd. 3. (Italics supplied.) No explanation appears for the amendment of the bill to its final form. It seems reasonable to presume, however, that the emphasis in the original bill on the square footage provided by the new construction work was altered to avoid the results discussed above.

10,000 total usable square feet of floor space." The original building and the addition created an improvement consisting of or providing more than 10,000 "total" usable square feet of floor space. The word "total" would have no real significance if the existing square footage were not added to the new addition to determine whether or not the improvement came within the statutory exemption.

Appellant points to a line of cases liberally construing Minn. St. c. 514 in favor of the lien claimant. See, e. g., Armco Steel Corp. v. Chicago & N. W. Ry. Co. 276 Minn. 133, 149 N. W. 2d 23 (1967). But because the legislature enacted § 514.011 to remedy the unfairness arising from the foreclosure of mechanics liens on property of unsuspecting owners, the section is remedial in character and therefore should be liberally construed, Blankholm v. Fearing, 222 Minn. 51, 22 N. W. 2d 853 (1946), and thus exceptions to it should be narrowly construed. These construction presumptions appear to counterpoise and we do not rely on either of them in deciding this case.

We hold that § 514.011, subd. 4(ii), applies to those nonresidential structures whose usable floor space consists of more than 10,000 square feet either before or after the construction work for which notice may be required. Because the expansion of the building owned by Precision Engineering increased its floor space to more than 10,000 square feet, appellant was not required to give notice to Precision Engineering. Therefore, the trial court's entry of summary judgment for Precision Engineering must be reversed.

Reversed and remanded.