**S.M. HENTGES & SONS, INC., Respondent,**

v.

**Richard MENSING, et al., Appellants (A08–0418), Respondents (A08–0569),**

**Land Geeks, LLC, et al., Defendants,**

**Short Elliott Hendrickson, Inc., Respondent (A08–0418), Appellant (A08–0569),**

**City of Cannon Falls, Respondent (A08–0418).**

**Nos. A08–0418, A08–0569.**

Court of Appeals of Minnesota.

Jan. 13, 2009.

Phillip R. Krass, Molly R. Hamilton, C. John Jossart, Krass & Monroe, P.A., Minneapolis, MN, for respondent S.M. Hentges & Sons, Inc.

Curtis D. Smith, Moss & Barnett, P.A., Minneapolis, MN, for appellants Richard Mensing, et al.

Stephen F. Buterin, Michael P. Coaty, Brian W. Varland, Coleman, Hull & Van Vliet, P.L.L.P., Minneapolis, MN, for respondent Short Elliott Hendrickson, Inc.

Thomas M. Scott, Campbell Knutson, P.A., Eagan, MN, for respondent City of Cannon Falls.

Considered and decided by HUDSON, Presiding Judge; LARKIN, Judge; and HARTEN, Judge.[*]

## O P I N I O N

LARKIN, Judge.

This appeal involves mechanic's-lien foreclosure actions in two consolidated appeals. In appeal number A08–0569, appellant-engineer, Short Elliott Hendrickson, Inc., claims that the district court erroneously invalidated appellant-engineer's mechanic's lien based on appellant-engineer's failure to provide prelien notice. Appellant-engineer argues that prelien notice was not required. In appeal number A08–0418, appellant-property owners, Richard Mensing, Martha Mensing, and the Martha A. Mensing Revocable Living Trust, claim that the district court erroneously concluded that respondent-contractor's, S.M. Hentges & Sons, mechanic's lien is valid. Appellant-property owners argue that (1) respondent-contractor cannot assert a mechanic's lien against the subject property because respondent-contractor has an equitable ownership interest in the property and (2) respondent-contractor failed to serve the proper prelien notice.

We conclude that prelien notice was not required. We therefore reverse the district court's invalidation of appellant-engineer's mechanic's lien and remand for further proceedings. We also conclude that respondent-contractor did not have an equitable ownership interest that precluded it from filing a mechanic's lien. We therefore affirm the district court's conclusion that respondent-contractor's lien is valid.

## FACTS

This appeal arises from an incomplete real-estate transaction in which Richard Mensing, Martha Mensing, and the Martha A. Mensing Revocable Living Trust (Mensings) attempted to sell certain land to Land Geeks, LLC (Land Geeks) and from related mechanic's-lien foreclosure actions filed by S.M. Hentges & Sons (Hentges) and Short Elliott Hendrickson, Inc. (SEH). The Mensings and Land Geeks entered into a purchase agreement

---

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

whereby Land Geeks would purchase property owned by Mensings. The sale was contingent upon Land Geeks obtaining preliminary plat approval for a residential development, which Land Geeks later obtained. The proposed development was wholly residential and is legally described as "Lots 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, and 12, Block 1, Woodridge Bluffs, Goodhue County, Minnesota; Lots 3 and 5, Block 2, Woodridge Bluffs, Goodhue County, Minnesota; Lots 1, 2, 3, 4, 9, 10, 11, 12, and 13, Block 3, Woodridge Bluffs, Goodhue County, Minnesota."

The purchase agreement was silent as to whether Land Geeks could perform any work on the property prior to closing. But Land Geeks entered into a contract with SEH for the provision of various surveying and engineering services in connection with Land Geeks's proposal to plat and construct residential lots on the Mensings' property. Land Geeks also entered into an agreement with Hentges, whereby Hentges agreed to improve Mensings' property and "advance" its work to Land Geeks in exchange for several profit-sharing provisions. Hentges's improvements to the subject property were to include grading, streets, curbs, sidewalks, and sanitary sewer, city water, and storm sewer systems. Later, Mensings, Land Geeks, and Hentges entered into an "Amendment to Purchase Agreement, Assignment and Consent to Assignment" in which Land Geeks assigned its interest in the purchase agreement to Hentges.

The Mensings eventually served a Notice of Cancellation of the Purchase Agreement on SEH, Hentges, and Land Geeks. Neither SEH, Hentges, nor Land Geeks cured Land Geeks's defaults under the Purchase Agreement. SEH and Hentges initiated mechanic's-lien foreclosure actions against the Mensings' property. SEH had filed a verified mechanic's-lien statement against the subject property but did not provide Mensings with prelien notice. Hentges had also filed a mechanic's lien statement but, unlike SEH, Hentges provided Mensings with prelien notice.

After a court trial, the district court concluded that (1) SEH failed to establish a valid mechanic's lien because SEH did not provide Mensings with prelien notice, and (2) Hentges satisfied all statutory requirements for a valid mechanic's lien. SEH appeals, claiming that prelien notice was not required because SEH's improvement to Mensings' property provided "more than four family units" and was "wholly residential in character." Minn. Stat. § 514.011, subd. 4b (2006). SEH also claims that engineers, as a class, are not required to provide prelien notice. Mensings appeal, arguing that Hentges should not have been permitted to file a mechanic's lien against the subject property because Hentges had an equitable ownership interest in the property. Mensings also claim that Hentges did not provide proper prelien notice. We consolidated the two appeals.

### ISSUES

I. Does the phrase "family units" in Minn.Stat. § 514.011, subd. 4b, include single-family lots?

II. Did Hentges have an equitable ownership interest in the subject property that precluded Hentges from filing a mechanic's lien against the property?

### ANALYSIS

**I**

Contractors and subcontractors are required to provide an owner with written notice of the possibility of subcontractors' mechanics' liens. Minn.Stat. § 514.011, subds. 1, 2 (2006). The purpose of the prelien-notice statute is to protect

owners and alert them to the risk of double liability if a contractor fails to pay its subcontractors. *Polivka Logan Designers, Inc. v. Ende,* 312 Minn. 171, 173, 251 N.W.2d 851, 852 (1977). Failure to strictly comply with prelien-notice requirements defeats a lien claimant's mechanic's lien. *Wong v. Interspace–West, Inc.,* 701 N.W.2d 301, 302–03 (Minn.App.2005), *review denied* (Minn. Oct. 18, 2005). There are, however, exceptions to the prelien-notice requirement. *See* Minn.Stat. § 514.011, subds. 4a, 4b, 4c (2006). The statutory exception at issue here states:

> The notice required by this section shall not be required to be given in connection with an improvement to real property consisting of or providing more than four family units when the improvement is wholly residential in character.

*Id.,* subd. 4b.

Although the statute establishes an exception for improvements that consist of or provide "more than four family units," the statute does not define the phrase "family units." Mensings argue that the phrase "family units" clearly connotes a multi-unit building such as a condominium or townhome, but not multiple lots. The issue presented in this appeal is whether the phrase "family units," includes single-family lots. We hold that it does.

■ The availability of a mechanic's lien is controlled by statute, and the interpretation of this statute presents a question of law, which this court reviews de novo. *David–Thomas Cos. v. Voss,* 517 N.W.2d 341, 342 (Minn.App.1994). When interpreting a statute, we must "ascertain and effectuate the intention of the legislature." Minn.Stat. § 645.16 (2006). The legislature's intent may be ascertained by considering, among other things, the need for the law, the circumstances under which it was enacted, the consequences of an interpretation, contemporaneous legislative history, other statutes concerning the same subject matter, and the object to be attained. *Id.; accord Minn. Life Health Ins. Guar. Assn. v. Dept. of Commerce,* 400 N.W.2d 769, 773 (Minn.App.1987).

The district court concluded that SEH was not exempt from providing prelien notice. In reaching this conclusion, the district court focused on Mensings' status as landowners, as opposed to land developers, and emphasized the difference between landowners and land developers. But section 514.011, subdivision 4b, does not distinguish between landowners and land developers on its face. The focus of the statutory exception is on the size and the character of the improvement. Based on the reasoning in *Polivka,* 312 Minn. at 174–75, 251 N.W.2d at 853, we conclude that any distinction based on the owner's status is already factored into the statutory exception.

The *Polivka* case involved interpretation of another statutory exception to the prelien-notice requirement, which excused prelien notice in connection with an improvement consisting of or providing "'more than 10,000 *total* usable square feet of floor space and the improvement is partly or wholly nonresidential in character.'" *Id.* at 173–74, 251 N.W.2d at 852 (quoting Minn.Stat. § 514.011, subd. 4(ii) (Supp.1973) (Italics supplied.)). The district court interpreted this exception narrowly and held that it applied only if the improvement increased the total usable square footage by 10,000 square feet. *Id.* at 174, 251 N.W.2d at 853. The supreme court disagreed and construed "the exception to apply to partly or wholly nonresidential structures that contain more than 10,000 usable square feet of floor space either before or after the construction work in question." *Id.*

The supreme court based its decision on the purpose of the prelien-notice statute and the legislative reasoning behind the statutory exceptions. *Id.* at 174–75, 251 N.W.2d at 853. The supreme court explained that "[s]ection 514.011 was intended to protect homeowners and small businessmen who out of ignorance might be forced to pay first the contractor and then the subcontractor." *Id.* at 174, 251 N.W.2d at 853. The supreme court concluded that the exception at issue reflected "the legislature's designation of larger businessmen who do not require such protection." *Id.* The supreme court found no significant reason to distinguish between "an owner of a building the floor space of which is increased to more than 10,000 square feet by new construction work and an owner who initially constructs a building of the same size." *Id.* at 175, 251 N.W.2d at 853.

Likewise, we find no significant reason to distinguish between an owner whose property improvement consists of a five-unit condominium building or five-unit townhome complex and an owner whose property improvement consists of a five-lot, residential development. *See* Minn. Stat. § 514.011, subd. 4b (applying "to real property consisting of or providing more than four family units"). Each owner falls within "the legislature's designation of larger businessmen who do not require [prelien-notice] protection," *Polivka*, 312 Minn. at 175, 251 N.W.2d at 853, given the size and the character of the improvement.

While *Polivka* involved a different statutory exception than the one at issue here, both exceptions are based on the size and the character of the improvement. *Compare* Minn.Stat. § 514.011, subd. 4b (exception when the improvement consists of or provides more than four family units and is wholly residential) *with* Minn.Stat. § 514.011, subd. 4(ii) (exception when the improvement consists of or provides more than 10,000 total usable square feet of floor space and is partly or wholly nonresidential). We therefore find the supreme court's reasoning applicable to our construction of the statutory exception at issue here. Based on the reasoning of *Polivka*, we conclude that the term "family units" in section 514.011, subdivision 4b, includes single-family lots.

 We recognize that the policy behind prelien notice favors the provision of notice and that exceptions to the prelien-notice requirement are narrowly construed. *Polivka*, 312 Minn. at 176, 251 N.W.2d at 854. However, there is a competing policy at hand. The mechanic's-lien statute is intended to protect laborers and material suppliers who contribute to the improvement of property. *See, e.g., Eischen Cabinet Co. v. Hildebrandt*, 683 N.W.2d 813, 816 (Minn.2004) (stating that the mechanic's-lien statute "is remedial in nature and its essential purpose is to reimburse laborers and material providers who improve real estate and are not paid for their services."). As the supreme court recognized in *Polivka*, these policies are counterpoised and therefore do not influence our determination.[1] *Polivka*, 312 Minn. at 176, 251 N.W.2d at 854.

1. We also note that the law provides a simple way for an owner to protect against mechanics' liens related to unauthorized improvements.

When improvements are made by one person upon the land of another, all persons interested therein otherwise than as bona fide prior encumbrancers or lienors shall be deemed to have authorized such improvements, in so far as to subject their interests to liens therefor. Any person who has not authorized the same may protect that person's interest from such liens by serving upon the persons doing work or otherwise contributing to such improvement within five days after knowledge thereof, written

▮ We now turn to the application of subdivision 4b to the facts of this case. The district court concluded that the improvement here was wholly residential. The district court also found that the improvement resulted in a development containing 22 lots. Given our conclusion that the term "family units" includes single-family lots, subdivision 4b applies, and SEH was not required to provide prelien notice. Accordingly, the district court erred by invalidating SEH's mechanic's lien based on SEH's failure to provide prelien notice. We therefore reverse the district court's determination that SEH failed to establish a valid mechanic's lien and remand for further proceedings. Because we reverse the district court's invalidation of SEH's mechanic's lien on other grounds, we decline to address SEH's claim that Minn.Stat. § 514.011, subd. 2(a), does not apply to providers of engineering services.

## II

▮ We now turn to Mensings' claim that Hentges had an equitable ownership interest in Mensings' property that precluded Hentges from filing a mechanic's lien against the property. The district court concluded that Hentges acquired an equitable interest in Mensings' property as the result of Land Geeks's assignment of its interest in the purchase agreement to Hentges but that Hentges never held legal title to the property. The district court determined that there was no controlling legal support for the proposition that an equitable interest acquired through an executory purchase agreement is the equivalent of legal title for the purpose of precluding Hentges from filing a mechanic's lien.

▮ Whether Hentges had an equitable ownership interest in the property that precluded it from filing a mechanic's lien is a legal determination. "An appellate court is not bound by, and need not give deference to, the district court's decision on a question of law." *Bondy v. Allen*, 635 N.W.2d 244, 249 (Minn.App.2001) (citing *Frost–Benco Elec. Ass'n v. Minn. Pub. Utils. Comm'n*, 358 N.W.2d 639, 642 (Minn.1984)). The application of law to the district court's established facts is a question of law, which this court reviews de novo. *Morton Bldgs., Inc. v. Comm'r of Revenue*, 488 N.W.2d 254, 257 (Minn. 1992).

Mensings rely primarily on *Nelson v. Nelson*, 415 N.W.2d 694 (Minn.App.1987) in support of their argument. In *Nelson*, appellant purchased ten lots from respondent under a contract for deed. *Id.* at 695. The contract for deed contained a provision that permitted appellant to begin construction on the lots before payment in full. *Id.* The contract for deed also stated that appellant would hold respondent harmless from any claim for labor, materials, or services related to said construction. *Id.* Appellant constructed homes on two of the lots. *Id.* Thereafter, appellant failed to pay the agreed-on contract price, and respondent served appellant with a notice of cancellation of the contract for deed. *Id.* at 695–96. In response, appellant served a mechanic's-lien statement, claiming a lien on one of the lots on which appellant had constructed a home. *Id.* at 696. When appellant did not cure the alleged defaults listed in the cancellation notice, appellant's vendee interest and the contract for deed terminated. *Id.*

notice that the improvement is not being made at that person's instance, *or by posting like notice,* and keeping the same posted, in a conspicuous place on the premises.

Minn.Stat. § 514.06 (2006) (emphasis added).

The district court held that appellant's mechanic's lien was invalid because appellant could not file a mechanic's lien on property that he owned. *Id.* at 697. We agreed stating "that the only reasonable interpretation of section 514.01 is that it precludes the filing of a mechanic['s] lien by an owner upon his own property." *Id.* at 697. We concluded that the contract-for-deed vendee was the equitable owner of the lots at the time of the improvements. *Id.* at 697–98. We based this conclusion on the status of the parties to a contract for deed. *Id.*

> The vendor holds the legal title merely as security for the payment of the purchase price. He has a lien thereon for his claim.... The vendee is the equitable and substantial owner subject only to the payment of the balance of the purchase price. Possession is important. He cannot be ousted by the vendor in the absence of default.... The vendor holds the title in trust for the vendee.

*Id.* at 698 (quoting *Summers v. Midland Co.,* 167 Minn. 453, 455, 209 N.W. 323, 323–24 (1926)).

Mensings claim that Hentges's equitable interest under the purchase agreement in this case is indistinguishable from the equitable ownership interest of the *Nelson* contract-for-deed vendee. Mensings argue that there is no distinction between the equitable ownership interest of a vendee under a purchase agreement and of a vendee under a contract for deed. But Mensings cite no persuasive legal authority for this proposition. The cases cited by Mensings in support of their argument are not on point.

We conclude that Hentges's equitable interest in the Mensings' property was not identical, or even similar, to the equitable ownership interest of the *Nelson* contract-for-deed vendee. As noted in *Nelson,* "Possession is important." *Id.* at 698

(quoting *Summers,* 167 Minn. at 455, 209 N.W. at 323–24). The vendee under a contract for deed is the "equitable and substantial owner" and "cannot be ousted by the vendor in the absence of default." *Id.* (quoting *Summers,* 167 Minn. at 455, 209 N.W. at 323–24). While Hentges was allowed access to Mensings' property for the purpose of making improvements pursuant to its contract with Land Geeks, we do not equate this access with the possession described in *Nelson.* Mensings do not claim that they were unable to "oust" Hentges from their property by virtue of the purchase agreement. We therefore affirm the district court's determination that Hentges's equitable interest in Mensings' property did not preclude Hentges from filing its mechanic's lien.

Mensings also argue that the district court erred by refusing to invalidate Hentges's mechanic's lien for lack of proper prelien notice. Mensings argue that respondent Hentges failed to serve them with proper prelien notice as required by Minn.Stat. § 514.011, subd. 2 (2006) (subcontractor's notice) and instead served them with prelien notice under Minn.Stat. § 514.011, subd. 1 (2006) (contractor's notice). Mensings contend that Hentges's failure to strictly comply with the proper subdivision of the prelien notice statute renders the mechanic's lien invalid.

Because we have determined that the prelien-notice-requirement exception in Minn.Stat. § 514.011, subd. 4b, applies in this case, we conclude that Hentges was not required to provide Mensings with prelien notice. Accordingly, we decline to address the issue of whether Hentges incorrectly provided contractor's notice under subdivision 1 of section 514.011 rather than subcontractor's notice under subdivision 2.

## DECISION

The phrase "family units" in Minn.Stat. § 514.011, subd. 4b, includes single-family lots. The prelien-notice-requirement exception in Minn.Stat. § 514.011, subd. 4b, applies when an improvement to real property consists of or provides more than four single-family lots and the improvement is wholly residential in character. We therefore reverse the district court's determinations that SEH was not exempted from providing prelien notice and that SEH failed to establish a valid mechanic's lien. We remand for further proceedings as to SEH and Mensings.

Given our conclusion that the prelien-notice-requirement exception in Minn.Stat. § 514.011, subd. 4b, applies here, we do not address Mensings' claim that Hentges failed to provide proper prelien notice. But we conclude that Hentges did not have an equitable ownership interest in Mensings' property that precluded Hentges from filing a mechanic's lien against the property. We affirm the district court's determination that Hentges satisfied all statutory requirements for a valid mechanic's lien.

**Affirmed in part, reversed in part, and remanded.**